No. 78,178

Ronald Graham, *Appellee,* v. State of Kansas, *Appellant.*

(952 P.2d 1266)

Opinion filed January 23, 1998.

*Thomas P. Alongi,* assistant county attorney, argued the cause, and *Carla J. Stovall,* attorney general, was with him on the brief for appellant.

*Jessica R. Kunen*, chief appellate defender, argued the cause, and *Randall L. Hodgkinson*, assistant appellate defender, and *Steven R. Zinn*, deputy appellate defender, were on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: Defendant filed a second K.S.A. 60-1507 petition, claiming (1) the trial court violated his constitutional rights in admitting a prior uncounseled Arkansas plea conviction at trial and when computing his sentence and (2) he was denied effective assistance of counsel at trial and during his first K.S.A. 60-1507 hearing. Defendant requested that he be granted a new trial or his sentence be recalculated without including the prior Arkansas conviction. The district judge granted the defendant a new trial. The State appeals.

## 1. *The Underlying Criminal Action*

In 1987, defendant Ronald Graham was tried and convicted in Geary County of possession of methamphetamine, K.S.A. 1987 Supp. 65-4127b(b)(2); possession of marijuana, K.S.A. 1987 Supp. 65-4127b(a)(3); and possession of cocaine, K.S.A. 65-4127a (Ensley). Evidence of Graham's two prior narcotics convictions, a 1983 Kansas and a 1985 Arkansas conviction, was admitted during the trial under K.S.A. 60-455. Because of the two prior felonies, Graham's sentence was statutorily enhanced to life imprisonment. K.S.A. 65-4127a (Ensley). His convictions were affirmed in *State v. Graham*, 244 Kan. 194, 768 P.2d 259 (1989). Graham's sentence was later commuted to 15 years to life by Governor Finney. Graham has served 10 years.

The facts of Graham's 1987 convictions were that on November 6, 1986, Junction City police officer James Nixon, knowing that he had previously issued Graham a traffic ticket for driving with a suspended license, stopped a blue Camaro driven by Graham. The car was not registered in Graham's name. Aware that a bench warrant had been issued for Graham's arrest, Nixon arrested Graham.

Noticing that Graham's eyes were extremely bloodshot, Nixon searched Graham for weapons and contraband. In Graham's jeans, Nixon found a plastic packet containing cocaine residue. In the lower right pocket of Graham's jacket, Nixon found a plastic sand-

wich bag with eight small plastic packages containing cocaine. The officer also found a large plastic bag containing a large amount of methamphetamine, another plastic bag containing marijuana, and three hand-rolled marijuana cigarettes in the car. After Graham was booked, another packet of marijuana was discovered in his jacket.

At Graham's trial, the State presented witnesses, including Officer Nixon, who testified regarding the arrest. Certified copies of Graham's two prior narcotics convictions were admitted into evidence.

Graham took the stand and testified that on the day before his arrest, he and a friend were working on the Camaro, which belonged to their friend, Alan Marks. He further stated that he and Miller then went to a club, left the club about 11:30 p.m., and ran into Marks, who borrowed Graham's jacket.

Graham testified that he spent the night at Miller's house. Waking during the night, he discovered that he had urinated in his pants. He went to the bathroom, disrobed and washed, and went back to sleep. Upon awakening the next day, he realized he was late for his court appearance. Since his pants were still wet, he put on Miller's pants, his own shirt, and Miller's jacket. He then drove Marks' Camaro in the direction of the courthouse and was stopped by Officer Nixon. Graham stated that when he was stopped, he believed his eyes appeared red and irritated because he had not worn glasses while working on Marks' automobile and possibly had received some weld burns to his eyes.

After the defense rested, the Geary County prosecutor, David Platt, who had previously testified for the State, was called as a rebuttal witness. Over Graham's objection, Platt related that during Graham's 1983 preliminary examination, as in this case, Graham had claimed he did not know there were drugs in the pocket of the shirt he was wearing. Platt stated Graham had testified that " 'the shirt was shared by [Graham] and three roommates and that there were a number of people that had been at their apartment that night, and that they'd had a party and the shirt had been laying there at some time and he put it on prior to leaving and being arrested on a traffic offense.' " 244 Kan. at 200.

The State's second rebuttal witness, Officer A.B. Farrow, had moved Graham from his jail cell to a holding cell after he was arrested in Kansas. At that point, Graham was represented by counsel. During that visit, Graham made incriminating statements to Farrow. At a *Jackson v. Denno* hearing outside the presence of the jury, Farrow testified he spoke to Graham for 2½ hours about an investigation Farrow was conducting regarding a close friend of Graham's, Kent Lakin, who had died in a bomb explosion. Farrow stated that in the course of the conversation, Graham told him Lakin had been building a bomb to kill Officer Nixon. Farrow testified that later in the conversation Graham stated that as many times as Officer Nixon had tried to catch him with drugs, sooner or later Nixon was bound to get lucky. Graham also admitted to Farrow he had sold methamphetamine and cocaine and had set up a known local drug dealer in business. Farrow testified he had not planned to discuss the charges against Graham; that Graham's statements were not solicited, but voluntary; and that no immunity was promised.

Regarding the 1985 Arkansas conviction, a police officer testified he stopped the automobile in which Graham was a passenger and found cocaine in the car. When the car was stopped, Graham was wearing a leather jacket identical to the one he was wearing when arrested by Officer Nixon. The Arkansas police officer further testified that Graham pled guilty to the crime of possession of cocaine with intent to deliver.

The jury convicted Graham of possession of marijuana, possession of methamphetamine, and possession of cocaine.

## 2. *The Direct Appeal, State v. Graham, 244 Kan. 194.*

On appeal, Graham first argued that certified copies of the 1983 Kansas and 1985 Arkansas narcotic convictions were erroneously admitted under K.S.A. 60-455 to prove his disposition to commit the crime charged. For purposes of this 60-1507 appeal, it is important that at a pretrial hearing, Graham's trial counsel raised the 60-455 issue but did not challenge the voluntariness of Graham's uncounseled plea to the 1985 Arkansas conviction.

The *Graham* court noted that the trial court had conducted a lengthy pretrial hearing prior to admitting evidence of Graham's 1983 and 1985 convictions at trial and found that the evidence was relevant to prove facts disputed and material allowed by K.S.A. 60-455. The *Graham* court then observed that where illegal possession of drugs is charged, intent may be the only issue. In that instance, the similarity of the prior offense to the crime charged is a key factor when determining whether that evidence is relevant to intent. Since Graham's intent to possess drugs was the primary issue, the *Graham* court found the prior crimes evidence was properly admitted under K.S.A. 60-455 to show knowledge, intent, and absence of mistake or accident. 244 Kan. at 197-99.

Graham next claimed that the probative value of his prior convictions was not sufficient to overcome the prejudicial effect of their admission. The *Graham* court rejected this claim, finding that the evidence did not confuse the issues or mislead the jury and that the jury was properly instructed to consider the prior crimes evidence only as to Graham's intent, absence of mistake, or accident. 244 Kan. at 199.

As to the admission of the 1985 Arkansas arrest and conviction, the *Graham* court noted that when the Arkansas officer stopped the car in which Graham was a passenger, cocaine was found in the car. The Arkansas officer's testimony that when the car was stopped, Graham was wearing a jacket identical to the one he was wearing when arrested in Kansas 2 years later, was admitted to show Graham previously had the same jacket. 244 Kan. at 198.

Graham also asserted the trial judge improperly admitted testimony of the State's rebuttal witnesses, Platt and Farrow. The *Graham* court observed that after Graham waived his constitutional right not to testify, he took the stand and admitted that his prior problems with drugs had resulted in two convictions. Graham testified he was unaware of the presence of the drugs until after Officer Nixon found them. On cross-examination, Graham stated the drugs probably belonged to the owner of the jacket. Graham further testified that he could not recall if he had testified during his preliminary examination for the 1983 charge of cocaine possession.

The *Graham* court found that Platt's testimony rebutted Graham's statement that he did not know the drugs were in the clothes or the car and created a logical and permissible inference that Graham, having previously used the same defense to a prior charge to which he ultimately pled guilty, was again attempting to utilize that defense. Finding that this evidence buttressed the State's contention that Graham's possession of the drugs was knowing and intentional, the *Graham* court found no abuse of discretion in admitting Platt's testimony. 244 Kan. at 200.

After reviewing the facts surrounding Officer Farrow's rebuttal testimony, the *Graham* court noted that Officer Farrow entered Graham's cell to discuss a crime unrelated to the crime with which Graham was charged. Graham was not a suspect in the unrelated crime. Graham spoke freely and at no time indicated an unwillingness to continue the conversation. There was no evidence to indicate Graham was coerced by promises or that the officer's acts were deceptive. The *Graham* court concluded that the mere fact that Farrow visited Graham in his cell and asked questions was not coercive and did not render Graham's statements inadmissible. 244 Kan. at 204.

Graham's convictions were affirmed.

### 3. *First Post-Conviction 60-1507 Action*

After his convictions were affirmed by this court, Graham filed habeas corpus actions in federal district courts in Arkansas and Kansas. The Arkansas habeas corpus petition was denied because Graham was not in custody. The Kansas habeas corpus petition was denied because the admissibility of the evidence had not yet been addressed in the Kansas state courts.

Subsequent to his rebuff in the federal district courts, Graham filed a 60-1507 motion in the Geary County District Court alleging ineffective assistance of counsel at trial. An attorney was appointed to represent Graham. At an evidentiary hearing, Graham's attorney submitted a transcript of the 1985 Arkansas plea hearing and affidavits attacking the validity of the plea. He then argued that Graham's Arkansas conviction resulted from a coerced plea and therefore was improperly used at trial and to enhance his Kansas

sentence. The district court denied that motion. On appeal, Graham argued that his trial counsel was ineffective because (1) he had prevented Graham from testifying at the pretrial hearing on the admissibility of the two prior convictions and at a *Jackson v. Denno* hearing and (2) even though counsel was aware that Graham did not have an attorney when Graham pled to the Arkansas charge, counsel failed to investigate and challenge the Arkansas conviction.

In an unpublished opinion filed November 22, 1991, the Court of Appeals rejected these arguments, finding that although the affidavits submitted by Graham contradicted the transcript of the Arkansas plea hearing, the affidavits were insufficient to sustain the burden of proof required to challenge the validity of the Arkansas conviction. In reaching this conclusion, the Court of Appeals stressed the fact that Graham neither testified in his own behalf nor presented testimony of Arkansas officials or other witnesses at the 60-1507 hearing. As to Graham's allegation that trial counsel was ineffective in not allowing him to testify regarding the Arkansas conviction, the Court of Appeals again found that Graham's uncorroborated affidavits were insufficient for relief under 60-1507. The Court of Appeals emphasized that a deciding factor in reaching its conclusion was Graham's failure to call his trial counsel to testify, after subpoenaing his former counsel for the 60-1507 evidentiary hearing.

### 4. Second Post-Conviction 60-1507 Action

On January 26, 1996, Graham filed a second 60-1507 action in Geary County District Court, again alleging ineffective assistance of counsel because (1) his prior uncounseled felony Arkansas conviction was admitted at trial and sentencing, (2) his involuntary statements to Officer Farrow were admitted into evidence, and (3) counsel had failed to investigate and raise these issues during the trial. In addition to arguing these grounds for relief, Graham pointed out that, contrary to the Court of Appeals statement that his trial attorney had been subpoenaed but not called to testify in his previous 60-1507 action, his trial counsel had not testified because his court-appointed counsel in the first 60-1507 proceeding

had allowed the subpoena for Graham's trial counsel to elapse and a new subpoena requiring the counsel to appear had not been issued.

The same judge who had tried Graham's drug case heard the 60-1507 motion. At the hearing, Graham's trial counsel, Roger Unruh, testified that he was aware that Graham's 1985 Arkansas plea was entered without counsel. Unruh stated that during the time that he had represented the defendant, he did not believe lack of counsel could invalidate a felony plea. Unruh also believed an uncounseled prior felony conviction was proper for sentence enhancement purposes. Unruh thought that because Graham had made a favorable plea bargain in Arkansas, the plea could not be attacked later. Furthermore, Unruh admitted that he had failed to seek a ruling as to the voluntariness of Graham's statements to Officer Farrow.

Graham testified that when he was apprehended in Arkansas in 1985, he had only completed the 10th grade. When the Arkansas police stopped the car, he ingested a quantity of drugs (LSD) which interfered with his ability to understand what was occurring for several days. Graham testified that he was "roughhoused" by police when he objected to a search of the car and had signed a document which he erroneously believed was a release for property taken from his person. After being detained in Dierks, Arkansas, Graham was transported to Nashville, Arkansas, and interrogated. During the interrogation, Graham stated he was slapped and threatened by officers and then signed another document he believed indicated that he refused to make a statement. Graham stated that he was held from December 27 to December 31, 1985, without being taken before a magistrate. During that time, officers threatened him, stating that he could be shot and then accused of attempting to escape. On December 31, he was placed in a room with a sheriff and police officer. Graham was offered immediate release, a suspended sentence, and a fine of $10,000 if he pled guilty. Graham stated he accepted a plea offer out of fear. Graham was then transported to the judge's residence in Ashdown, Arkansas. Prior to being taken before the judge, Graham stated he was informed that

there was no legal representation for him and was told what to say regarding waiving his right to counsel and entering a plea of guilty.

After hearing Graham's testimony and observing his demeanor, the district judge found his testimony credible. The judge was influenced by the fact that Graham's statements had been consistent throughout the nearly 8-year period Graham had sought post-conviction relief. The district judge also pointed out that the transcript of Graham's Arkansas habeas hearing contained testimony of Arkansas officers which corroborated some of the circumstances alleged by Graham regarding the uncounseled plea. We note that this 60-1507 hearing was the first opportunity Graham had for a full hearing as to the voluntariness of the Arkansas plea. At the conclusion of the hearing, the district judge complimented Graham on his professional presentation of the evidence.

In his memorandum decision granting a new trial, the district judge stated:

"Petitioner first claims that his counsel failed to properly object to the admission into evidence of a conviction in the State of Arkansas on the grounds that the conviction was without benefit of counsel and in violation of *Gideon v. Wainwright*, 372 U.S. 335 and his right to counsel under the United States Constitution.

"Secondly, the petitioner claims ineffective assistance of counsel, because counsel failed to object to the admission into evidence of petitioner's statements without the prosecution showing that the statements were voluntary and allowing the Court to rule upon their voluntariness and their admission into evidence.

. . . .

"The Court finds the facts to be as follows:

"1. The petitioner herein was convicted and sentenced by this Court for possession of methamphetamine, possession of marijuana and possession of drug paraphernalia in Geary County District Court case no. 86-CR-717 for which he received sentences of life imprisonment for count one and a sentence of one year each for possession of marijuana and possession of drug paraphernalia.

"2. The petitioner's direct appeal *State v. Graham*, 244 Kan. 194, addressed the admission into evidence of the Arkansas convictions only as to whether it was admissible under K.S.A. 60-455 and did not address the question of whether the admission of the previous convictions violated the petitioner's constitutional right to counsel under the 6th Amendment to the United States Constitution.

"3. The petitioner's previous motion under K.S.A. 60-1507 in Geary County District Court case no. 89-C-219 was denied because the petitioner failed to sustain the burden of proof after his then court-appointed counsel failed to obtain proper service of a subpoena upon his former counsel who represented him at

the jury trial. Contrary to the memorandum opinion (unpublished) of the Kansas Court of Appeals the trial counsel for the petitioner was not subpoenaed nor was he present at the evidentiary hearing for the K.S.A. 60-1507 motion in case no. 89-C-219. The issues did not receive a fair hearing because of ineffective assistance of counsel at the K.S.A. 60-1507 hearing in failing to have the necessary fact witnesses present to testify.

"4. At the jury trial in Geary County District Court case no. 86-CR-717 this court admitted into evidence the record of a conviction for possession of cocaine in the Circuit Court of Howard County, Arkansas case no. CR 85-48 wherein the petitioner was not represented by counsel.

"5. The record clearly shows that the petitioner's retained counsel at the jury trial in case no. 86-CR-717 knew the petitioner was not represented by counsel at the time of the Arkansas convictions. Petitioner's trial counsel challenged the admission of the convictions under K.S.A. 60-455 but made no investigation or objection or challenge based upon the possible violation of right to counsel under the 6th Amendment to the United States Constitution.

"6. Petitioner's writ of habeas corpus in the U.S. District Court for the Western District of Arkansas challenging the validity of the Howard County, Arkansas, convictions for 6th Amendment lack of counsel was denied for the reason that the defendant was not in custody for habeas corpus purposes. A similar ruling was obtained from the U.S. District Court for Kansas for the reason that the issue of admissibility of evidence should first be addressed to the state court.

"7. The Howard County, Arkansas, Circuit Court conviction case no. CR 85-48 was the result of a plea negotiated by two prosecuting attorneys and a sheriff opposing a defendant with a tenth grade education who had no attorney to counsel him. The co-defendant made a confession and the plea was offered only if both parties would accept and enter pleas of guilty without an attorney. The officers admit to coaching the defendants as to how to enter the plea and the prosecutors or officers informed the presiding judge the defendants were waiving their right to an attorney. The proceedings were expedited and heard in another county on New Year's Eve. The co-defendants were given immediate suspended sentences upon payment of a large fine.

"8. A substantial question as to the admissibility of the Howard County Circuit Court convictions has been raised by the evidence herein which was not presented to the trial court because trial counsel failed to raise the issue by motion or objection. The failure to raise the issue of a violation of Sixth Amendment rights under the U.S. Constitution constituted ineffective assistance of counsel.

"9. At the request of the prosecutor the trial court conducted proceedings to determine admissibility of evidence of defendant's custodial statements. The Court found that the statements were made while the defendant was in custody after the defendant retained counsel and that the statements were inadmissible in the state's case in chief because of the violation of *Miranda* procedure. The Court did not at that time rule upon the voluntariness. The Court also incorrectly stated that voluntariness did not affect the admissibility of rebuttal evidence. Upon

the Court refusing to rule upon the question of voluntariness, defense counsel announced he would request a hearing on the question prior to the state presenting its rebuttal evidence. Defense counsel for the petitioner failed to make any further objection to the rebuttal evidence. The question of voluntariness of the defendant's statements was not presented or argued to the trial court prior to their admission. The failure to present the issue to the court by motion or objection was the direct responsibility of trial counsel and a failure to do that which he stated on the record that he was going to do.

"CONCLUSIONS OF LAW

"1. The admissibility of evidence at trial is a question to be determined by the trial judge. The trial judge can only decide the issues fairly if all the issues are presented. The issue of the validity of the Arkansas convictions is a substantial question concerning violation of constitutional rights. The admission of a void conviction in violation of rights guaranteed by the U.S. Constitution cannot be held to be harmless error. The defendant cannot be said to have been provided a fair trial if the trial court was not properly presented with the issue affecting admissibility of substantial evidence. The defendant's trial counsel was aware of the issue and by failing to bring the issue before the court was ineffective as counsel to protect the constitutional rights of the defendant to a fair trial.

"2. The admissibility of the defendant's statements made to a police officer while the defendant was in custody and after the defendant was represented by counsel, when counsel was not present, raises a substantial issue of voluntariness of the statements. The admission of the defendant's statements without a determination of voluntariness is a violation of the defendant's rights as guaranteed by the United States Constitution. The failure of counsel to properly object and present the issue of voluntariness squarely before the Court is a failure to effectively represent his client. The failure to make the objection or present the issue results in the issue going by default without a clear ruling by the trial court. When substantial issues are allowed to default the defendant is denied a fair trial.

. . . .

"The Court therefore concludes that actions of counsel in failing to present substantial issues to the court for determination constituted ineffective assistance of counsel and denied the petitioner a fair trial before the jury.

"The Court therefore determines that the judgment of conviction in Geary County District Court case no. 86-CR-717, be and the same is hereby vacated and held for naught, and the defendant Ronald Graham is ordered to stand trial upon the Information therein."

The State appealed to the Kansas Supreme Court.

## DISCUSSION

### 1. Jurisdiction

On April 29, 1997, Graham filed a motion to transfer this case to the Court of Appeals. Graham argued the Kansas Supreme

Court did not have jurisdiction to hear the 60-1507 action. That request was denied on May 14, 1997. Graham first argues that proper jurisdiction for an appeal of the grant of a 60-1507 motion is the Court of Appeals. For authority, Graham points out that 60-1507 actions are original civil actions which may be appealed "to the Court of Appeals from the order entered on the motion as in a civil case." Supreme Court Rule 183(k) (1997 Kan. Ct. R. Annot. 189). We disagree. Contrary to Graham's position, Supreme Court Rule 183(k) does not preclude this court from exercising discretion and accepting the State's appeal.

## 2. K.S.A. 60-1507 Proceedings

In Kansas, an evidentiary hearing pursuant to K.S.A. 60-1507 is a civil proceeding, governed by the rules of civil procedure insofar as applicable. Rule 183(a). Rule 183(g) places the burden of proof upon the movant to establish his grounds for relief by a preponderance of the evidence. Rule 183(j) requires the trial court to make findings of fact and conclusions of law on all issues presented. The trial court's findings of fact and conclusions of law enable the appellate courts to determine whether the decision reached by the trial court " 'follows as a matter of law from the facts stated as its basis, and also whether the facts so stated have any substantial support in the evidence.' " *Taylor v. State*, 252 Kan. 98, 103, 843 P.2d 682 (1992) (quoting *White v. State*, 201 Kan. 801, 804, 443 P.2d 182 [1968]).

The standard for review of an appeal of a 60-1507 motion is the same as the standard required for other civil proceedings. Where the trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991) (quoting *Williams Telecommunications v. Gragg*, 242 Kan. 675, 676, 750 P.2d 398 [1988]). Furthermore, "[u]pon appellate review [the appellate court] accepts as true the evidence and all inferences to be drawn [from the evidence] which support or tend to support

the findings of the trial judge." *Short v. Wise*, 239 Kan. 171, 178, 718 P.2d 604 (1986).

### 3. *Ineffective Assistance of Counsel*

The purpose of the effective assistance guarantee of the Sixth Amendment to the Constitution of the United States is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial. *Strickland v. Washington*, 466 U.S. 668, 689, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). A court deciding an ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Washington*, 466 U.S. at 690.

When a trial court considers a claim of ineffective assistance of counsel, it must follow the two-prong test established by the United States Supreme Court in *Washington* and adopted by this court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). The test requires:

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Washington*, 466 U.S. at 687.

The proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. *Chamberlain*, 236 Kan. at 656-57.

As Graham notes in his brief, the district judge's ruling granting his 60-1507 motion request for a new trial relied on two separate grounds: (1) trial counsel's failure to sufficiently raise the issue of voluntariness regarding Graham's statement to Officer Farrow admitted in rebuttal at trial and (2) trial counsel's failure to investigate and raise the constitutional validity of Graham's guilty plea in Arkansas and failure to object to the admission of the prior uncounseled felony conviction.

Graham's statement to Officer Farrow was that "as many times as Officer Nixon had tried to catch him with drugs, sooner or later Nixon was bound to get lucky." *Graham*, 244 Kan. at 201. In granting the 60-1507 motion, the district court found that the admissibility of Graham's statements to Farrow made while Graham was in custody and in the absence of his court-appointed counsel raised a substantial issue of voluntariness of the statements. The district court believed the failure of trial counsel to present the issue of voluntariness before the court was a failure to effectively represent his client and violated Graham's rights to a fair trial as guaranteed by the United States Constitution. As this court observed in Graham's direct appeal, when such evidence is erroneously admitted, the error can be of such constitutional magnitude that courts are precluded from applying the harmless error rule and a reversal may be required. *Graham*, 244 Kan. at 202.

The *Graham* court concluded that because Graham's statements to Farrow were made without the benefit of a *Miranda* warning, the trial court correctly determined that they were inadmissible in the State's case in chief. It noted however, that the shield provided by *Miranda* may not be perverted into a license to use perjury by way of a defense, free from risk of confrontation with prior inconsistent utterances. 244 Kan. at 204 (citing *Harris v. New York*, 401 U.S. 222, 225-26, 28 L. Ed. 2d 1, 91 S. Ct. 643 [1971]). The *Graham* court noted that Graham spoke freely to Farrow and at no time indicated an unwillingness to continue the conversation. There was no evidence to indicate Graham's statement to Farrow was coerced or elicited by deception. Since there was no evidence that the statement concerning Officer Nixon catching defendant with drugs was involuntary or coerced, the *Graham* court concluded the trial court did not abuse its discretion by allowing the statement to be used as rebuttal. 244 Kan. at 204. Therefore, the district judge's conclusion regarding Officer Farrow's testimony is incorrect. The officer's testimony was proper rebuttal testimony.

With respect to admission of Graham's uncounseled Arkansas conviction, we conclude that there is substantial competent evidence in the record to support the district judge's determination that Graham's trial counsel was ineffective in completely failing to raise the issue of the voluntariness of Graham's plea to the Arkansas charge before Graham's trial. We note that at the second 60-1507 evidentiary hearing, Graham testified as did both his trial counsel and his appointed counsel in the first 60-1507 proceeding. The district judge also admitted the transcript of Graham's prior habeas corpus hearing in Arkansas federal court which contained testimony from an Arkansas deputy sheriff involved in the prior Arkansas conviction.

However, we do not agree that there is substantial competent evidence to support the judge's determination that trial counsel's deficient performance prejudiced the defense to the extent that Graham was deprived of a fair trial. In Graham's direct appeal we observed that, in addition to the admission of evidence regarding Graham's Arkansas conviction, substantial testimony regarding his prior Kansas conviction was admitted. For example, the Geary

County prosecutor, David Platt, related that at Graham's 1983 preliminary examination, Graham had disclaimed ownership of the shirt he was wearing in which drugs were found. Platt's testimony was damaging because it rebutted Graham's testimony that he did not know the drugs were in the clothes or the car and created an inference that Graham was attempting to use the same defense he had used for a charge to which he ultimately pled guilty. Because this evidence was admitted at trial, the evidence regarding the Arkansas conviction would have been merely cumulative. Therefore, the ineffectiveness of Graham's counsel did not result in errors so prejudicial as to have deprived Graham of a fair trial.

Furthermore, in his analysis of the admission of evidence of the Arkansas conviction, the district judge failed to note that the Arkansas officers testified that when the car in which Graham was a passenger was stopped and the cocaine was discovered, Graham was wearing a jacket identical to the jacket he was wearing when later arrested in Kansas. This testimony was admitted as relevant 60-455 evidence by the trial judge. The fact that Graham may have later been coerced to enter a plea does not render the evidence inadmissible.

However, although the admission of Graham's Arkansas conviction did not prejudice Graham's right to a fair trial, the conviction could have been prejudicial at Graham's sentencing. We note that the admission of a prior criminal conviction which is constitutionally infirm under the standards of *Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963), is inherently prejudicial and to permit use of such a tainted prior conviction for sentence enhancement would undermine the principle of *Gideon. State v. Delacruz*, 258 Kan. 129, Syl. ¶ 4, 899 P.2d 1042 (1995).

If the Arkansas conviction had been excluded, Graham's conviction would have been reduced to a Class B felony, K.S.A. 65-4127a (Ensley), and the trial judge would have had the discretion to impose a sentence shorter than the 15 years to life sentence which Graham received. We therefore reverse the district court's decision granting Graham a new trial and remand the case to the district court to determine whether admission of Graham's prior Arkansas

conviction was improperly considered to enhance Graham's sentence.

Reversed in part and remanded.