No. 87,898

UNIFIED SCHOOL DISTRICT NO. 233 JOHNSON COUNTY, KANSAS, *Plaintiff/Appellee,* v. KANSAS ASSOCIATION OF AMERICAN EDUCATORS, *Defendant/Appellant,* and OLATHE NATIONAL EDUCATION ASSOCIATION, *Defendant/Appellee.*

64 P.3d 372

Opinion filed March 7, 2003.

*Jean Lamfers,* of Lamfers & Associates, L.C., of Shawnee, argued the cause, and *Nancy Merrill Wilson,* of the same firm, was with her on the briefs for defendant/appellant.

*Michael G. Norris,* of Norris, Keplinger & Herman, L.L.C., of Overland Park, argued the cause, and *John Hicks,* of the same firm, was with him on the briefs for plaintiff/appellee.

*David M. Schauner,* of Kansas National Education Association, of Topeka, argued the cause, and *Robert Blaufuss* and *Marjorie A. Blaufuss,* of the same association, were with him on the brief for defendant/appellee.

The opinion of the court was delivered by

NUSS, J.: The Kansas Association of American Educators (KANAAE) appeals the district court's declaratory judgment denying it access to the internal mail system of the Olathe Unified School District No. 233 (school district or district). We transferred the appeal from the Court of Appeals pursuant to K.S.A. 20-3018(c).

KANAAE, the school district, and the Olathe National Education Association (ONEA) (which is allowed access to the internal mail system) require us to determine whether the district court

erred when it concluded that: (1) KANAAE is a "professional employees' organization" under the Professional Negotiations Act (Negotiations Act or Act), K.S.A. 72-5413 *et seq.*; (2) the school district's board of education properly denied KANAAE use of the mail system to distribute its membership materials; and (3) this denial did not violate KANAAE members' First Amendment rights to freedom of association. We affirm the district court in all respects.

## FACTS:

The school district and the State of Kansas have recognized ONEA as the exclusive collective bargaining representative for the district teachers since November 1970. In that capacity, ONEA has served as the teachers' representative on the Professional Council, which is the forum for negotiating their terms and conditions of professional service with the district.

In the mid 1990s, a number of the district's teachers became members of the Association of American Educators (AAE), a self-described conservative alternative to the National Education Association with which ONEA is affiliated. In February 1996, the new AAE members contacted a school board member, inquiring about potential AAE membership on the Professional Council and about their use of the internal mail system, *i.e.*, mailboxes, to distribute their recruiting materials. The district refused AAE's request, citing its collective bargaining/negotiated agreement (negotiated agreement) with ONEA as the basis for its denial. Douglas Barnett, an early member of the AAE in Kansas, independently researched the basis for the district's denial and learned that not only was ONEA properly certified as the teachers' exclusive collective bargaining representative but also that ONEA had successfully negotiated with the district for the exclusive use of the mail system. Barnett acknowledged that during his early years with AAE, he had aggressively solicited members for AAE and may have told others that he hoped it would replace ONEA as the district teachers' representative.

More than 2 years later, on August 13, 1998, Barnett, as the incorporator and president of KANAAE, asked the district's su-

perintendent of schools for permission to use the mail system to distribute his newly incorporated organization's membership brochure. According to Barnett's brochure, ONEA members were encouraged to drop their membership and join KANAAE for hundreds of dollars less per year while still receiving similar benefits. This brochure further advised potential members of KANAAE's goal to "enhance the professional status and compensation of educators" "without the union's [ONEA] social agenda" and proclaimed "it's time for a new voice speaking for main-stream teachers in Kansas." The district again refused the request, again citing its negotiated agreement with ONEA.

In January 1999 and again on May 27, 1999, Barnett twice accessed the district's electronic mail system to solicit the entire district staff to join KANAAE. Among other things, Barnett's messages reminded teachers of the required deadlines for dropping their ONEA membership. ONEA's suspicion of KANAAE's motives increased.

Approximately 1 year later, on May 5, 2000, Vince Snowbarger, Executive Director of KANAAE, made another request for use of the mail system, particularly to distribute a revised membership brochure. This brochure compared the benefits of KANAAE membership with those of union membership and asked teachers why they should "pay three times as much" in union dues "when KANAAE . . . offers many of the same benefits that the teacher union provides at a fraction of the cost of belonging to a union." In support of Snowbarger's request, his board of directors passed a resolution 3 days later, on May 8, 2000, which stated:

" '[T]he Kansas Association of American Educators shall not engage in professional negotiations as that term is defined in K.S.A. 72-5413(g), but it continues to reserve the right to discuss issues with boards of education, superintendents or other executive officers employed by boards of education as provided in K.S.A. 72-5415(b).' "

Snowbarger then provided copies of the resolution to the district.

After the district consulted with ONEA's president, it again refused the request, despite KANAAE's recent resolution. The district again cited its negotiated agreement with ONEA.

The district was now faced with KANAAE's allegations that refusal to allow the brochures' distribution through the mail system would violate KANAAE members' rights to free speech and association. On the other hand, the district was faced with ONEA's allegations that such distribution would be a prohibited practice under the Negotiations Act. Consequently, on June 2, 2000, the district filed a petition for declaratory judgment in the Johnson County District Court.

During 2 days of hearings, the court considered the testimony of Barnett and Aletha Rogers, members of KANAAE's board of directors, and Snowbarger. Barnett testified that though 80 to 90% of his group's members were professional employees, other members of the community were allowed to join also. He further explained that while KANAAE was interested in enhancing teachers' compensation, it did not currently intend to negotiate with the district. Throughout his testimony, Barnett presented the current board's views concerning negotiations, but acknowledged that a future board of directors could void the recent resolution and seek to negotiate. In her time-limited testimony, Rogers testified that KANAAE advocated merit pay and hiring rather than the seniority-based systems promoted by unions, *e.g.*, ONEA.

During his direct examination, Snowbarger testified that though KANAAE was an association predominantly made up of professional educators which considered itself an alternative to unions, it had no interest in negotiating with the district over terms of professional employment. On cross-examination, however, Snowbarger acknowledged he was the author of a promotional flyer entitled "10 REASONS TO DUMP THE UNION AND JOIN KANAAE." The flyer outlined KANAAE's philosophy and advantages of membership:

"KANAAE stands for the highest in ethical standards and educational excellence.
"KANAAE promotes *character education*. We even support the education of characters!
"KANAAE supports education in Kansas, not confrontation in Washington.
"KANAAE is non-profit, non-partisan, non-sectarian - but we are pro-education.
"KANAAE does not support political candidates or social agendas unrelated to education.

"KANAAE asks members to determine the positions the organization will take on education issues.

"KANAAE gives you a 'choice' of affiliation with a professional emphasis.

"KANAAE is linked with other state and national independent teacher organizations across the United States.

"KANAAE provides its members with **$1 million in liability coverage** (plus defense costs). Remember the answer to the question 'Can I be sued?' is 'Of course you can!'

"KANAAE dues are **$149 per year** compared to union dues of $400-500**."

Following the 10 reasons cited, Snowbarger's flyer went on to encourage teachers to give themselves "a raise" by ending their union membership in favor of KANAAE, "the Professional Alternative."

The district emphasized this theme during its closing argument by citing several newspaper articles in evidence. There, Snowbarger reportedly had claimed that KANAAE "had not ruled out becoming a participant in collective bargaining . . . if a majority of teachers in the district want that," but that it was not currently KANAAE's goal "to assume that role."

The district court's resultant journal entry in favor of the district and ONEA did not appear to differentiate between findings of facts and conclusions of law, but stated them as follows:

"1. Olathe NEA is a professional employees' organization as that term is defined by K.S.A. 72-5413(e) of the Professional Negotiations Act ('PNA'), K.S.A. 72-5413 et seq.

"2. Olathe NEA has been recognized as the exclusive bargaining representative of the professional employees of the plaintiff School District in accordance with K.S.A. 72-5416(a).

"3. In its role as the exclusive professional bargaining representative in the District, Olathe NEA has negotiated with the plaintiff school district 'terms and conditions of professional service' as that term is defined by K.S.A. 72-5413(1).

"4. Among the 'terms and conditions of professional service' negotiated by the plaintiff and the Olathe NEA is the exclusive right of Olathe NEA to use the Plaintiff's internal mail system. This right is exclusive to Olathe NEA insofar as it relates to the dissemination of information regarding the professional negotiation process and related matters to members of the professional bargaining unit.

"5. KANAAE is an organization in which 'professional employees', as that term is defined by K.S.A. 72-5413(c), participate.

6. KANAAE is an organization that exists for the purpose, in whole or in part, of engaging in professional negotiations with boards of education with respect to terms and conditions of professional service.

"7. KANAAE is a 'professional employees' organization', as that term is defined by K.S.A. 72-5413(e) of the PNA.

"8. The KANAAE membership brochure (Exhibit 27) that KANAAE has asked to be distributed to members of the bargaining unit through the plaintiff's mail system is 'information related to the professional negotiation process.'

"9. The Court therefore determines that the plaintiff would not be in violation of Kansas law if it declined to distribute the KANAAE brochure (Exhibit 27) that was presented to the plaintiff for distribution through the school's internal mail system in May, 2002."

## ANALYSIS:

*Issue 1: Is KANAAE a "professional employees' organization" under the Negotiations Act?*

The issue of whether a group of people constitutes a "professional employees' organization" under the Negotiations Act is a question of law. See *State Bd. of Nursing v. Ruebke,* 259 Kan. 599, 624-25, 913 P.2d 142 (1996) (The question of whether certain activities are exempted from the Healing Arts Act is a question of law.). KANAAE correctly asserts that our review of conclusions of law is unlimited. *Lindsey v. Miami County National Bank,* 267 Kan. 685, 689-90, 984 P.2d 719 (1999). When as here, however, the district court has made findings of fact as a basis for its legal conclusions, our function merely is to determine whether the findings are supported by substantial competent evidence and whether those findings are sufficient to support the conclusions of law. *Unrau v. Kidron Bethel Retirement Services, Inc.,* 271 Kan. 743, 747, 768, 27 P.3d 1 (2001). Substantial evidence is that which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. *State ex rel. Stovall v. Meneley,* 271 Kan. 355, 387, 22 P.3d 124 (2001).

We begin our analysis by examining several provisions of the Negotiations Act. The Kansas Legislature passed the Act in 1970. L. 1970, ch. 284. It grants to a board of education's professional employees, *e.g.,* certified teachers, the right to form, join, or assist professional employees' organizations (PEO). K.S.A. 72-5413(c); K.S.A. 72-5414. The Act also grants them the right to participate, through the PEO, in professional negotiations with the board to improve their terms and conditions of professional service. K.S.A.

72-5413(e); K.S.A. 72-5414. While the Act allows more than one PEO per district, a particular PEO becomes the exclusive negotiations representative of all professional employees in "an appropriate negotiating unit" — typically all certified teachers in a school district — when a majority of the unit's professional employees so designate. K.S.A. 72-5413(f); K.S.A. 72-5415(a). KANAAE concedes that ONEA has been recognized by the Olathe school district and by the State of Kansas as the exclusive bargaining representative in such professional negotiations since November 1970. Since that time, ONEA has negotiated with the board on virtually an annual basis regarding the bargaining unit's professional employees' terms and conditions of professional service.

Our analysis of whether KANAAE is a PEO continues with consideration of the Act's definition of that term:

"[A]ny one or more organizations, agencies, committees, councils or groups of any kind [1] in which professional employees participate, and [2] which exist for the purpose, in whole or part, of engaging in professional negotiation with boards of education with respect to the terms and conditions of professional service." K.S.A. 72-5413(e).

Since KANAAE admits that 80 to 90% of its members are professional employees, the first element of a PEO is satisfied. Consequently, our examination focuses on the remaining statutory element of a negotiating purpose. Toward that end, "professional negotiation" is defined as "meeting, conferring, consulting and discussing in a good faith effort by both parties to reach agreement with respect to the terms and conditions of professional service." K.S.A. 72-5413(g). We have previously said that this phrase means more than the "duly selected and exclusive negotiating agent" merely making "suggestions, which the Board is then free to ignore." *National Education Association v. Board of Education,* 212 Kan. 741, 748, 512 P.2d 426 (1973), *superseded by statute on other grounds, U.S.D. 501 v. Secretary of Kansas Dept. of Human Resources,* 235 Kan. 968, 970, 685 P.2d 874 (1984).

The other phrase relevant to our analysis, "terms and conditions of professional service," is statutorily defined with two specific categories of topics and one catchall: (1) such topics as salaries and wages, overtime pay, hours and amounts of work, insurance, and

disciplinary procedures; (2) privileges to be granted the recognized PEO including such topics as voluntary payroll deductions, use of school facilities for meetings, and dissemination of information regarding the professional negotiation process; and (3) "such other matters as the parties mutually agree upon as properly related to professional service." See K.S.A. 72-5413(l)(2)(A), (B), and (C).

We do not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. See *Meneley*, 271 Kan. at 387; *Unrau*, 271 Kan. at 747. We also accept as true all inferences to be drawn from the evidence which support or tend to support the findings of the district court. *Graham v. State*, 263 Kan. 742, 753-54, 952 P.2d 1266 (1998). Under these standards, the record reveals substantial competent evidence to support the district court's finding that KANAAE exists for a negotiating purpose, the remaining statutory element defining a PEO. Douglas Barnett, KANAAE's president and a founding member of its board of directors, announced a pre-incorporation goal of securing a place on the Professional Council which, because the council functions as the negotiating body for the school district, reflects KANAAE's members' interest in participating in professional negotiations. One of the membership brochures that it wished to distribute to Olathe teachers stated that "KANAAE seeks to enhance the . . . compensation of educators." Barnett — who qualifies as an agent of KANAAE given his roles as incorporator, president, and director — admitted his early goal was for AAE to replace ONEA as the professional bargaining representative in the district. He also acknowledged that a future KANAAE board of directors could void the May 8, 2000, resolution and seek to negotiate. Finally, Barnett also advised district teachers on several occasions, through either circulating flyers or drafting an email, on how to drop their NEA membership and join KANAAE.

A KANAAE flyer created by Snowbarger is titled "10 REASONS TO DUMP THE UNION AND JOIN KANAAE." Among other things, it states: "KANAAE dues are *$149 per year* compared to union dues of $400-500**" and "GIVE YOURSELF A 'RAISE' AND JOIN THE PROFESSIONAL ALTERNATIVE!" The KANAAE membership brochure he wished to place in the internal

mail system was of the same tenor, asking, "Why pay three times as much?" and claiming "KANAAE . . . offers many of the same benefits that the teacher union [ONEA] provide[s] at a fraction of the cost of belonging to a union." Snowbarger — who qualifies as an agent of KANAAE given his role as Executive Director — also stated in the newspaper that KANAAE would not rule out becoming a participant in collective bargaining if the majority of teachers in a district wanted that. Moreover, KANAAE director Rogers testified that her organization was opposed to the union's salary structure based on tenure and advocated a merit-based system instead.

This evidence reveals KANAAE's significant concerns about professional employees' compensation, which is not only a mandatory topic of negotiation under the Negotiations Act, but is also the central issue in most negotiations. See *NEA-Wichita v. U.S.D. No. 259*, 234 Kan. 512, Syl. ¶ 5, 674 P.2d 478 (1983). Just as important, it also reveals KANAAE's attempts to expand its membership by encouraging defections from ONEA. If enough defections occur to help establish 30% of the bargaining unit as KANAAE members, KANAAE can then attempt to decertify ONEA as the exclusive bargaining representative in the district by filing a petition with the Secretary of the Kansas Department of Human Resources. See K.S.A. 72-5417; K.S.A. 72-5418(b)(1); K.A.R. 49-25-5(a). Similarly, for KANAAE to prevail by majority vote in the resultant secret ballot election to decide whether ONEA should be replaced by KANAAE as the exclusive bargaining representative, ONEA's membership would need to be further decreased. K.S.A. 72-5419. The statements "DUMP THE UNION AND JOIN KANAAE" and "GIVE YOURSELF A 'RAISE' AND JOIN THE PROFESSIONAL ALTERNATIVE" signify KANAAE's intent to replace ONEA as the bargaining representative, which in turn demonstrates it exists, at least in part, for the purpose of engaging in professional negotiations. See *Graham*, 263 Kan. at 753-54; *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 133, 815 P.2d 72 (1991) (Intent is normally a question of fact and may be shown by acts, circumstances, and inferences reasonably deducible therefrom and need not be established by direct proof.).

KANAAE has countered with evidence to support its claim that it is not a PEO. For example, it points to its May 8, 2000, resolution. The district court obviously found this resolution unconvincing, however, because KANAAE expressly reserved the right to discuss issues, *i.e.*, to meet, confer, consult, and discuss with boards of education — the very definition of "professional negotiation" under the Act. See K.S.A. 72-5413(g). The district court also obviously found the resolution was contradicted by other competent evidence, including that stated above. As previously stated, we do not weigh conflicting evidence. See *Meneley*, 271 Kan. at 387.

KANAAE appears to argue, however, that we are prohibited from giving substantial deference to these district court findings because of the "business judgment rule." This argument is without merit. When correctly applied, the business judgment rule operates as a shield to protect directors and officers from liability for unprofitable or harmful corporate transactions when they were made in good faith, with due care, and within the directors' or officers' authority. *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. at 759; 18B Am. Jur. 2d, Corporations §§ 1703, 1704. As the school district points out, however, KANAAE attempts to use it as a sword to attack the propriety of a trial court's decision that rests on other competent evidence. Stated another way, KANAAE attempts to present the rule as somehow dispositive of the issue of its own intent. This argument is contrary to the concept of a hearing where all sides present evidence supporting their position and contradicting the others.' See, *e.g.*, *Brown v. United Methodist Homes for the Aged*, 249 Kan. at 133 (Intent is normally a question of fact and may be shown by acts, circumstances and inferences reasonably deducible therefrom and need not be established by direct proof.).

The district court's finding of fact that KANAAE exists for the purpose, in whole or in part, of engaging in professional negotiations with boards of education, together with KANAAE's admission of professional employee membership, are sufficient to support the court's conclusion of law that KANAAE is a "professional employees' organization" as that term is defined by the Negotiations Act.

Issue 2: *Did the school district properly deny KANAAE use of the district's internal mail system to distribute its membership materials?*

Once the KANAAE has been determined to be a PEO, the question shifts to whether the Negotiations Act nevertheless allows it to use the mail system concurrently with the other PEO, the ONEA. Our appellate review of the district court's conclusion to deny such use is based upon the same standard as applied in issue 1 above: to determine whether the findings of fact are supported by substantial competent evidence and whether those findings are sufficient to support the conclusions of law.

We begin by again examining various provisions of the Negotiations Act. As mentioned, it is a statutory system based upon the concept of two separate groups — the board of education as the employer and a PEO on behalf of the professional employees — engaging in professional negotiations to reach agreement for their mutual benefit by establishing, maintaining, protecting, or improving the terms and conditions of the employees' professional service. K.S.A. 72-5413(e), (f), and (g); K.S.A. 72-5414; K.S.A. 72-5421; K.S.A. 72-5430(b)(5) and (c)(3). Consistent with this concept, the Act also states that when a majority of the professional employees in the bargaining unit select a representative for the purposes of professional negotiation, "such representative shall be the exclusive representative of all the professional employees in the unit for such purpose." K.SA 72-5415(a). While employees, either individually or collectively, may still present or make known their positions or proposals to the board, the right to actually negotiate remains exclusively with the bargaining unit. KANAAE concedes that the right to negotiate has been the exclusive domain of the ONEA since 1970.

The Act sets forth the "terms and conditions of professional service," *i.e.*, those numerous issues which are negotiable between the PEO and the board of education. See K.S.A. 72-5413(l). Included is the following privilege granted to the "recognized" PEO:

"Dissemination of information regarding the professional negotiation process and related matters to members of the bargaining unit on school or college premises through direct contact with members of the bargaining unit, the use of bulletin

boards on or about the facility, and the use of the school or college mail system to the extent permitted by law." K.S.A. 72-5413(l)(1)(B).

Through ONEA's give and take process of professional negotiations with the school district, it has been granted the privilege of disseminating such information through the district's mail system as allowed by the statute. Accordingly, the school district is statutorily prohibited from granting this privilege to any other PEO. K.S.A. 72-5413(l)(1)(B) and (2). Granting the privilege concurrently to another PEO can be characterized as a "prohibited practice" and evidence of the school district's bad faith in professional negotiations. See, e.g., K.S.A. 72-5430(b)(2) (Assisting or interference in the formation or existence of any professional employees' organization) and (b)(6), (denying the rights accompanying recognition of a professional employees' organization as the exclusive representative). Since the district court determined the KANAAE was a PEO, it determined that the Negotiations Act prohibited KANAAE from concurrently using the mail system for disseminating such information.

In response, KANAAE asserts that the district court erred because the material it wished to distribute was not "regarding the professional negotiation process and related matters" as defined in K.S.A. 72-5413(l)(1)(B). Few matters are more related to the professional negotiation process, however, than the KANAAE brochures that openly encourage the dropping of membership in the recognized exclusive bargaining representative and increasing the membership in an alternative organization. In KANAAE's brief it candidly acknowledges that it competes with ONEA for membership and additionally acknowledges that the two organizations "compete for membership dues dollars, because as a practical matter both organizations offer similar benefits . . . and one would not expect teachers to pay two sets of dues for similar benefits." Its argument that it does not compete with ONEA as the Olathe teachers' exclusive bargaining representative, however, is disingenuous because once the teacher numbers favor KANAAE, then ONEA will no longer be the bargaining representative. Since the Act provides for negotiations via bargaining units, as opposed to

individual employees negotiating their own contracts, the decertification of ONEA would virtually guarantee that survivor KANAAE would fill that void as the exclusive bargaining representative for all terms and conditions of employees' professional service.

We hold that the district court's legal conclusion — denying KANAAE access to the mail system because using it for disseminating negotiations information or related matters was the exclusive privilege of another PEO, the ONEA — is sufficiently supported by factual findings which are based upon substantial competent evidence. *Unrau,* 271 Kan. at 747.

Issue 3: *Did the district's denial of KANAAE's access to the mail system violate KANAAE members' First Amendment right of association?*

For KANAAE's last argument, it alleges that the district's denial of its access to the mail system, although required by statute, violates its members' right to freedom of association under the First Amendment to the United States Constitution. Our review of constitutional questions is unlimited. *In re Tax Application of Lietz Constr. Co.,* 273 Kan. 890, 906, 47 P.3d 1275 (2002).

The school district correctly points out, however, that substantial doubt exists on whether a First Amendment challenge was raised in the pretrial order pursuant to K.S.A. 2002 Supp. 60-216(e) or was otherwise raised by KANAAE at trial. We acknowledge that the issue does not appear in the pretrial order or in the journal entry of judgment. Additionally, we have long held that where constitutional grounds for reversal are raised for the first time on appeal, they are not properly before the appellate court for review. *In re D.D.P., Jr.,* 249 Kan. 529, 545, 819 P.2d 1212 (1991). Even if we were to allow KANAAE's argument under this jurisdictional basis, however, we reject it under the substantive law.

*Perry Ed. Assn. v. Perry Local Educators' Assn.,* 460 U.S. 37, 74 L. Ed. 2d 794, 103 S. Ct. 948 (1983), is on point. There, the Supreme Court considered whether the Constitution had been violated when a union that had been elected by public school teachers as their exclusive bargaining representative was granted access to school mail facilities, while such access was denied to a rival union.

While the Court found that constitutional interests were implicated, it held there were no violations of the rival union's First Amendment rights. 460 U.S. at 54. The Court noted that the differential access provided the two rival unions was reasonable because it was wholly consistent with the district's legitimate interest in preserving the property for the use to which it is lawfully dedicated.

"Use of school mail facilities enables PEA [union] to perform effectively its obligations as exclusive representative of *all* Perry Township teachers. Conversely, PLEA [rival union] does not have any official responsibility in connection with the school district and need not be entitled to the same rights of access to school mailboxes. We observe that providing exclusive access to recognized bargaining representatives is a permissible labor practice in the public sector." 460 U.S. at 51.

KANAAE's reliance on *Healy v. James,* 408 U.S. 169, 33 L. Ed. 2d 266, 92 S. Ct. 2338 (1972), is misplaced because its relevance would require that the KANAAE be similar to the student organization at issue there and not be a PEO as we have determined. Additionally, even if KANAAE were not a PEO, it has failed to establish the mail system was used as a matter of course by the general public to qualify as a "public forum," *i.e.,* open to all. See *Perry,* 460 U.S. at 55.

KANAAE also appears to allege a further constitutional violation: The district court's determination that KANAAE was a PEO meant that its members' rights under the Kansas Constitution and the Negotiations Act not to join a labor union/organization were violated. We acknowledge that both the state constitution (Art. 15, § 12) and the Negotiations Act (K.S.A. 72-5414) essentially provide that no one may be compelled to join a union or to participate in its activities. The district court's determination, however, does not force any one to be a member of KANAAE. Rather, it notifies KANAAE members that they belong to a professional employees' organization, which in turn allows them to exercise their constitutional and statutory rights to not belong to a union by resigning. These individuals are no more required to belong to KANAAE than they are to ONEA; the Act provides they may continue to reap the benefits of the professional rights and privileges negoti-

ated by the ONEA, without being members themselves. See K.S.A. 72-5414 and 72-5415 (only a majority of the negotiating unit need be ONEA members). In short, the constitutional rights of KANAAE members have not been violated.

Affirmed.

ABBOTT, J., not participating.

DAVID S. KNUDSON, J., assigned.