(576 P.2d 1097)
No. 49,468

CITY OF OVERLAND PARK, KANSAS, *Appellant,* v. JAMES B. SANDY, *Appellee*

Opinion filed March 31, 1978.

*Michael D. Mance,* Assistant City Attorney, for appellant.

*J. Steven Schweiker,* of The David R. Gilman Firm, of Overland Park, for appellee.

Before SWINEHART, P.J., REES and SPENCER, JJ.

SWINEHART, J.: This case commenced in the Overland Park, Kansas, Municipal Court, where Sandy was convicted of possession of stolen property, marijuana, and num-chucks, an unlawful weapon. Sandy appealed the conviction to the district court. There he made a pretrial motion to suppress the physical evidence, which was sustained. The City has taken this interlocutory appeal.

Appellee Sandy alleges that the City of Overland Park does not have the right to take an interlocutory appeal pursuant to K.S.A. 1977 Supp. 22-3603, and further that if such authority exists appellant has failed to comply with Supreme Court Rule 6.10, which provides that the attorney general shall approve the brief of appellant herein.

Both grounds are without substance and the same are denied.

The City of Overland Park, Kansas, was prosecuting an appeal

to district court of a criminal offense, a violation of municipal ordinances, which provided for fines and jail sentences. K.S.A. 1977 Supp. 22-3603 provides for interlocutory appeals in criminal cases and this case is within that classification even though it involves a misdemeanor as provided by a city ordinance. A city, in the enforcement of its ordinances, is alleged by appellee Sandy to be an agency of the state prosecutorial system and as such must comply with the Appellate Rules of the Supreme Court, *i.e.,* Rule 6.10, which requires the attorney general's approval of briefs. Rule 6.10 does not have application to appellant. The City of Overland Park is not appearing on behalf of the State of Kansas or as an agent or officer thereof; therefore, the attorney general's approval of its brief is not required.

Considering the question of whether the physical evidence was properly suppressed, the following facts are relevant. Appellee and a friend were driving in a lawful manner through the City of Overland Park, Kansas, at approximately 1:00 a.m., when observed by a police officer. At that time, the two cars were traveling in opposite directions. The officer turned his car and followed appellee, who shortly turned from the roadway into a convenience store parking lot. The officer followed and conducted a routine driver's license check on appellee. While so doing, he flashed his flashlight into the back seat area and observed a set of scales. The officer had observed similar scales in the near past at police headquarters and knew that like scales had been reported stolen from some of the high schools in the area and some had been recovered. Appellee was then questioned about how he came to be in possession of the scales, and when the officer determined the explanation was not satisfactory, he requested consent to search the automobile. This was voluntarily granted and that search revealed the marijuana and the num-chucks. The appellee was then arrested, charged, tried in the municipal court and found guilty of possession of stolen property (scales) and possession of marijuana and a dangerous weapon (num-chucks).

As previously stated herein, appellee appealed this conviction to the district court and, during that proceeding, the articles of the search were suppressed and the City appealed.

The sole question to be decided here is whether K.S.A. 8-244 authorizes police officers to stop an automobile in order to make an isolated spot check for a driver's license. If it does, the

discovery and seizure of the scales are justified under the plain view doctrine, and the evidence discovered in the subsequent consent search is not contaminated under the fruit of the poisonous tree doctrine. Resolution of the question requires an interpretation of K.S.A. 8-244 and a definition of the scope of authority it confers upon law enforcement officers.

The statute provides:

"Every licensee shall have his or her driver's license in his or her immediate possession at all times when operating a motor vehicle, and shall display the same, upon demand of any officer of a court of competent jurisdiction or any peace officer, examiner or officer of the division of vehicles. . . ."

Although the statute itself does not specifically authorize an officer to stop a car under any circumstances to make a license check, the statute must be read as implicitly granting some sort of right to stop vehicles for that purpose. Otherwise, the statute would be meaningless for want of enforceability. The precise scope of the right to stop automobiles to make a driver's license check has apparently never been considered by the Supreme Court of Kansas.

Kansas cases which are related to the problem contain some dicta which is of limited usefulness. *State v. Boone,* 220 Kan. 758, 556 P.2d 864 (1976), and *State v. Karney,* 208 Kan. 677, 494 P.2d 1204 (1972), are cases which examine the admissibility of evidence seized from cars under the plain view doctrine. However, in both of these cases the initial police action in stopping the particular cars was based upon probable cause to believe that the cars' occupants were engaged in criminal activity. These cases differ from the one at hand in that, here, the only possible reason for the stop was for the officers to check and determine whether or not the driver was in the possession of the required driver's license as provided by K.S.A. 8-244. In *Boone* and *Karney,* the court did find that the evidence was in plain view and subject to seizure. Several other cases establish that, when a motor vehicle is stopped for a traffic violation, no matter how minor, items visible in plain view are subject to seizure. In *State v. McMillin,* 206 Kan. 3, 476 P.2d 612 (1970), the Supreme Court upheld the admissibility of items seized in plain view from a car originally stopped for speeding. In *State v. Robinson,* 203 Kan. 304, 454 P.2d 527 (1969), the defendant's car was stopped for improper lights. *State v. Grabowski,* 206 Kan. 532, 479 P.2d 830 (1971), dealt with the

admissibility of evidence seized after the defendant gave his consent to the search of his automobile. In that case, the defendant's car, which was carrying out-of-state license tags, was seen by the police in an area known to contain a heavy growth of marijuana. When the defendant re-entered the car and drove away, the police stopped him for a license check pursuant to K.S.A. 8-244. The Supreme Court held that the stop was proper, stating:

"Defendant's car was first observed under very unusual and suspicious circumstances. The routine check of his driver's license was entirely proper and was authorized by K.S.A. 8-244. . . ." (p. 534.)

Thus, although the court did not specifically hold that an officer's right to stop a car for a license check was limited to those situations where he had reason to believe that some violation was taking place, the language concerning "suspicious circumstances" could be interpreted to be a limiting factor when deciding the question here before the court.

Another Kansas case dealing with the right of a police officer to stop a car for a license check is *State v. Frizzell,* 207 Kan. 393, 485 P.2d 160 (1971). There, the police officer was conducting a systematic roadblock check of licenses. When Frizzell's car was stopped, the officer saw a pile of clothing lying in the back seat of the car. Since all of the items of clothing bore price tags and none of the occupants of the car could satisfactorily explain why they were there, the clothing was seized and the Supreme Court held that it was properly admitted into evidence under the plain view doctrine. The court therein stated:

"Under the provisions of K.S.A. 8-244, [the officer] was lawfully authorized to stop the automobile to check the operator's driver's license. . . . It is clear [the officer] did not stop the vehicle as a ruse or subterfuge to see what was in it, but rather as a good faith effort to check the driver's license." (p. 397.)

Here, again, it might be said that the Supreme Court did not by this case authorize the random, arbitrary type of license check which took place in the case we are now considering.

A review of cases from other jurisdictions shows a split of authority regarding a police officer's power to make a random spot check such as the one challenged here. Two cases will serve to illustrate the dichotomy.

*People v. Ingle,* 36 N.Y.2d 413, 330 N.E.2d 39 (1975), involves a statute which authorized police to check vehicles on the high-

way for possible equipment violations. Although this case does not involve checking for a driver's license, the state interests in enforcing vehicle equipment regulations are similar enough to those in enforcing license laws to warrant consideration of the *Ingle* case. There, a police officer stopped a 1949 automobile for an equipment check, even though to all appearances the car was in perfect condition. In the process of checking the car, the officer discovered marijuana. To ascertain whether the evidence was admissible, the New York Court of Appeals engaged in a balancing process to determine whether the seizure was reasonable under the Fourth Amendment. Balancing the state's vital interest in safety on public highways against an individual's expectation of privacy and freedom of movement in his automobile, the court concluded that an arbitrary stop of a single automobile for a routine check is impermissible unless the officer reasonably suspects a violation of the vehicle code.

The contrary rule is illustrated by *Palmore v. United States,* 290 A.2d 573 (D.C. App. 1972). There, in the process of making a license check on the driver of a single car randomly stopped, officers seized an unregistered hand gun which was in plain view. The *Palmore* court engaged in the same balancing process as did the *Ingle* court, weighing the state's interest in limiting highway use to licensed, competent drivers against the individual's interest in privacy. Focusing on the momentary nature of the interruption of the individual's activities, the court held that the stop and subsequent seizure of evidence were permissible under the Fourth Amendment standards. The court went on to say:

"We hasten to add that the courts, including ours, have warned law enforcement officers, specifically and emphatically, that a so-called 'spot check' is *not* to be 'used as a substitute for a search for evidence of some possible crime unrelated to possession of a driver's permit.' . . ." (p. 582.)

After due consideration of these two lines of reasoning, we have concluded that K.S.A. 8-244 implicitly authorizes an officer to randomly single out an automobile to check the driver's license, even though the officer has no cause to believe that the driver or the automobile is in violation of the vehicle code. The state's vital and compelling interest in public highway safety outweighs the objection an individual may have to the momentary intrusion into his privacy which is necessary to make a license check. This is not to say that an officer may use such a

scheme in order to carry out a plain view search upon an unfounded suspicion that the driver of the vehicle is involved in other illegal or criminal activities. Since the initial stop was justified, the officer's seizure of contraband which was in plain view does not offend the Fourth Amendment's prohibition against unreasonable search and seizure.

We are well aware that our ruling is not so restrictive as the appellee would have it to be. However, we assume that those persons charged with the responsibility of enforcing our laws will themselves obey the law, and will not use this power to harass or as a guise for seeking evidence of other crimes.

Reversed and remanded.