No. 86,167

STATE OF KANSAS, *Appellee*, v. RONALD GRAHAM, *Appellant*.

(46 P.3d 117)

Opinion filed May 31, 2002.

*Randall L. Hodgkinson*, deputy appellate defender, argued the cause and was on the brief for appellant.

*Tony R. Cruz*, assistant county attorney, argued the cause, and *Chris Biggs*, county attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: Ronald Graham was convicted after a bench trial of one count of possession of methamphetamine and one count of possession of marijuana. Based on evidence of two prior convictions, the district court found that Graham's otherwise severity level 4 crimes became severity level 1 crimes under K.S.A. 2001 Supp. 65-4160(c). Combined with Graham's criminal history score of "H," he received a presumptive sentence of 150 months. Graham now appeals his convictions and sentence.

Our jurisdiction is under K.S.A. 20-3018(c) (transfer on our own motion).

The issues are whether: (1) the police conducted an illegal search of Graham's car, (2) the district court erred in allowing Graham to waive his right to counsel, (3) the evidence was sufficient to support Graham's convictions, and (4) Graham's enhanced sentence was unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), and *State v. Gould*, 271 Kan. 394, 23 P.3d 801 (2001).

Finding no error, we affirm.

## FACTS

Graham is no stranger to this court. A background review will be helpful in linking the facts of his current arrest and conviction with the issues. Graham's original convictions of possession of methamphetamine, possession of marijuana, and possession of cocaine were affirmed in *State v. Graham*, 244 Kan. 194, 768 P.2d 259 (1989). His sentence was later commuted to 15 years to life by Governor Joan Finney. In 1998, because of a K.S.A. 60-1507 action that alleged ineffective counsel, we reversed and remanded for resentencing. See *Graham v. State*, 263 Kan. 742, 952 P.2d 1266 (1998).

Graham had served 10 years of his original sentence and was resentenced for possession of cocaine, a class B felony. The sentence for a class B felony committed in 1989 was a minimum term of 5 to 15 years and a maximum term of 20 years to life. K.S.A. 21-4501(b) (Ensley). The district judge imposed a 15-year to life sentence. After resentencing, the district court suspended imposition of the sentence and placed Graham on 1 year of probation, supervised by court services. Later, the district court, after finding that Graham had violated the terms of his probation, revoked probation. The district court's decision was affirmed in *State v. Graham*, 272 Kan. 2, 30 P.3d 310 (2001).

We now move forward to the facts behind this fourth appeal. On February 8, 1999, during his probationary period, Graham appeared in Geary County District Court on a motion to suppress in an unrelated case. Sergeant Mike Life of the Junction City Police

Drug Task Force was in the courtroom. At the time of the hearing, Sergeant Life knew that Graham had an outstanding warrant for a probation violation. The warrant had been outstanding since November 1998. Due to "safety" and "investigative concerns," the sergeant decided not to serve the warrant until Graham could be stopped in a controlled setting.

After Graham and two female companions, Cindy Tucker and Tammy Taylor, left the hearing, the Junction City Police Department stopped Graham's car. Graham, who was seated in the front passenger seat, was placed under arrest on a probation violation warrant for unlawful drug use.

Sergeant Life searched Graham's car incident to his arrest. The sergeant testified that he could see what he believed to be marijuana in plain view on the front passenger floorboard when Graham was removed from the front passenger seat. While standing outside Graham's car, the sergeant was able to distinguish the marijuana fairly easily as the carpet in the car was black. As he moved closer to the suspected marijuana, the sergeant noticed more marijuana in the car and detected the odor of burnt marijuana.

Graham's car was seized and transported to the police station for a thorough search. The officers found a small amount of methamphetamine in a pair of men's shorts in the trunk. They also found a jacket containing Graham's identification and more marijuana. A pack of rolling papers was found in the glove box.

Graham filed a motion to suppress the evidence seized from his car. At the suppression hearing, Sergeant Life testified that he had two reasons for arresting Graham outside the courthouse: (1) concern for the safety of the officers and the general public, and (2) the opportunity to search Graham's vehicle incident to an arrest. The district court (1) rejected the State's claim that the delay in serving the arrest warrant served any safety purpose, (2) found that serving the arrest warrant did not, by itself, justify a search of Graham's car, and (3) denied the motion to suppress based on a finding that the marijuana on the floorboard was in plain view.

Graham's court-appointed defense attorney, at Graham's request, filed a motion to withdraw as counsel. Graham also waived his right to a jury trial. The district court granted the motions, and

the withdrawing attorney assisted Graham as advisory counsel during the bench trial. At sentencing, the district court denied Graham's motion for a downward dispositional or downward durational departure.

## DISCUSSION
### The Search

Graham argues that the police conducted an illegal search of his car. We review the factual underpinnings of a district court's decision not to suppress the fruits of the search by a substantial competent evidence standard. The ultimate legal conclusion drawn from those facts is reviewed by a de novo standard. We do not reweigh the evidence. *State v. Crum*, 270 Kan. 870, 872, 19 P.3d 172 (2001).

The Fourth and Fourteenth Amendments to the United States Constitution prohibit unreasonable searches and seizures. Unless a search falls within one of a few exceptions, a warrantless search is per se unreasonable. See *Katz v. United States*, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). Under the plain view exception to the search warrant requirement, a law enforcement official can seize evidence of a crime if " '(1) the initial intrusion which afforded authorities the plain view is lawful; (2) the discovery of the evidence is inadvertent; and (3) the incriminating character of the article is immediately apparent to searching authorities.' " *State v. Canaan*, 265 Kan. 835, 843, 964 P.2d 681 (1998) (quoting *State v. Parker*, 236 Kan. 353, Syl. ¶ 2, 690 P.2d 1353 [1984]).

Marijuana was seized from the passenger floorboard of Graham's car after Graham was arrested for a probation violation. At the suppression hearing, Sergeant Life testified that if he arrested Graham in his car, he would have "the ability to search . . . incident to arrest." He testified that after Graham was taken out of the car and placed in custody, he could "see . . . what appeared to be marijuana on the floor, in plain view." The sergeant described the substance as "[p]ieces of green vegetation, not large, . . . that looked—appeared to have been dropped on the floorboard." He indicated that, based on his training and experience, he determined there was a good possibility that it was marijuana.

On cross-examination, Sergeant Life testified:

"Q. . . . When did you see the marijuana?

"A. After he [Graham] was removed from the car, I could see it on the floorboard. I got into the car to look closer and also search incident to arrest.

"Q. All right. When did you make the determination in your own mind that this was marijuana you were looking at?

"A. As I got closer I could—it appeared to be marijuana. I could smell burnt marijuana coming from the ashtray that was right there next to me.

"Q. Was this before or after you got in the car?

"A. After I got in the car."

Graham asserts that the State failed to meet the first prong of the plain view exception. Officers stopped Graham's car in order to arrest him for a probation violation. The district court found that Sergeant Life did not have authority to search Graham's car incident to the arrest. As Graham correctly points out, the State did not appeal from this finding. Graham contends that the sergeant did not make any determination regarding the green vegetation on the floorboard until he had illegally entered the car. However, in looking at the sergeant's testimony at the suppression hearing, it is clear that he first observed the suspected marijuana while standing outside of the car and then confirmed his belief after getting into the car. The initial observation that afforded authorities the plain view of the contraband was lawful.

Graham notes that Sergeant Life thought he was justified in searching the car as a search incident to an arrest. When asked at the suppression hearing why he served Graham's warrant away from the courtroom, the sergeant said, "Besides the safety issues, as a police officer, arresting Mr. Graham, away from the courtroom, in his car, would give me, . . . the ability to search . . . incident to arrest."

Graham argues that it was the sergeant's intention to search his car from the moment Graham stepped outside of the courtroom. Therefore, Graham concludes that there was nothing inadvertent about Sergeant Life's discovery. The State points out that the discovery of the marijuana on the floorboard was not a result of a search; rather, the sergeant saw the vegetation while he stood outside of the car.

Graham relies on *City of Overland Park v. Sandy*, 2 Kan. App. 2d 176, 576 P.2d 1097, *aff'd* 225 Kan. 102 (1978). In *Sandy*, the Court of Appeals upheld the seizure of items in plain view after a random driver's license check. According to Graham, Sergeant Life was engaged in "a scheme . . . to carry out a plain view search upon an unfounded suspicion that [Mr. Graham] was involved in other illegal or criminal activities." See 2 Kan. App. 2d at 180-81.

On petition for review in *Sandy*, we upheld the seizure of the contraband but did not comment on the Court of Appeals' language on which Graham relies. See *City of Overland Park v. Sandy*, 225 Kan. 102, 106, 587 P.2d 883 (1978). We note that this court's authorization of random stops in *Sandy*, 225 Kan. 102, was effectively overruled by *Delaware v. Prouse*, 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979). See *State v. Deskins*, 234 Kan. 529, 536, 673 P.2d 1174 (1983).

The *Sandy* opinion is not helpful in the analysis of Graham's situation. Here, the police did not make a random stop; instead, they made a stop based on an outstanding warrant. The sergeant saw contraband in plain view. Although he thought he could perform a search incident to arrest, the marijuana on the floorboard was observed before a search was conducted. Sergeant Life thought the green vegetation in plain view on the black floorboard was marijuana.

The third prong of the plain view exception requires that "the incriminating character of the article is immediately apparent to searching authorities." *Canaan*, 265 Kan. at 843. Again, Graham contends that Sergeant Life did not conclude that the material on the floorboard was marijuana until he got into the car. We disagree. Even before the confirmation, the sergeant had reasonable cause to believe the vegetation was marijuana based on his training and experience.

Graham also asserts that officers illegally impounded his car, rendering inadmissible any evidence found from the search. Graham advances the impoundment argument for the first time on appeal. Thus, the issue is not properly before us. See *State v. Mason*, 268 Kan. 37, 39, 986 P.2d 387 (1999).

We find no error in the district court's denial of Graham's motion to suppress.

## Waiver of Counsel

Graham also argues that the district court failed to correctly warn and question him before allowing him to waive his right to counsel. This contention lacks merit. A criminal defendant who before trial clearly and unequivocally expresses a wish to proceed pro se has the right to self-representation after a knowing and intelligent waiver of the right to counsel. A knowing and intelligent waiver requires that the defendant be informed on the record of the dangers and disadvantages of self-representation. The choice is to be made " 'with eyes open.' " *State v. Collins*, 257 Kan. 408, 413, 893 P.2d 217 (1995).

Graham contends that the district court never warned him about the dangers and disadvantages of self-representation or questioned him about his decision to proceed pro se after receiving such warnings. The record shows that Graham was questioned about his decision in two separate hearings. The district court required Graham to sign a journal entry, prepared by the State, before it would allow Graham's defense counsel to withdraw. The original journal entry is not in the record on appeal. The transcript of the May 18, 2000, waiver hearing shows that Graham did sign such a journal entry and had no questions about the document or the information contained within it. The appearance docket does not show whether a written waiver was filed with the district court at the time of the hearing.

The record does contain a May 11, 2000, journal entry, signed by Geary County District Judge Larry Bengtson and Tony Cruz, Assistant Geary County Attorney, which was filed in the district judge's office on February 7, 2002. (It appears that this document was recreated for the record on appeal.) The journal entry reflects the district court's substantial findings with respect to Graham's request to proceed pro se and to waive a jury trial. The journal entry reflects that the district court informed Graham that he would be held to the same standard of legal knowledge as an attorney, and he informed the court that he still wished to represent himself. The district court stated: "Pursuant to *Faretta v. Califor-*

*nia*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), the Court finds that the defendant knows what he is doing and does so 'with eyes open.' " Other findings were also consistent with those recommended in Barbara, Kansas Criminal Law Handbook, pp. 11-10, 11-11 (1992). See *State v. Lowe*, 18 Kan. App. 2d 72, 76-77, 847 P.2d 1334 (1993).

The hearing transcripts show that the district court questioned Graham about why he thought he could represent himself better than appointed counsel. Graham expressed several points of dissatisfaction with previous counsel. Defense counsel said, "[Q]uite frankly, I've dealt with Mr. Graham for a long time [and] while no lawyer would ever suggest that somebody not school trained in law really is probably competent to do this, if anybody is, who's not school trained in law, I think Mr. Graham is." The district court agreed.

The district court informed Graham of his possible maximum sentence. It also questioned Graham about his decision to waive a jury trial. Graham said he had talked with his counsel at length about a jury trial and that he would still prefer a bench trial. After approving the journal entry in which Graham waived his right to counsel and waived his right to a jury trial, the court granted Graham's request to represent himself.

The district court kept appointed counsel on the defense as advisory counsel. Graham had no objection to this arrangement. A review of the trial transcript shows that counsel was present throughout the trial as advisory counsel to Graham, assisting and advising him. Counsel made many objections and arguments, including the closing argument. Counsel also questioned some witnesses.

The record as a whole shows that Graham understood the disadvantages of self-representation and knowingly and voluntarily waived his right to be represented by counsel. See *People v. Romaro*, 694 P.2d 1256, 1265 (Colo. 1985) ("The appointment of advisory counsel is one method of ensuring that the defendant has available a resource person from whom he can seek direction on matters pertinent to his defense and, if necessary, who can take over the case in the event the defendant is unable to continue.");

*Metcalf v. State*, 629 So. 2d 558, 563 (Miss. 1993) ("An accused could place the trial judge in a difficult situation by insisting on a pro se trial, and, upon conviction, claim that he/she did not have the benefit of counsel and did not knowingly waive counsel. . . . In such delicate situations, the question of counsel waiver must be determined on the facts of each case."). Under the facts here, Graham made a knowing and intelligent waiver of counsel.

## Sufficiency of the Evidence

Graham argues that there was insufficient evidence to support his convictions for possession of methamphetamine and possession of marijuana. We disagree.

Our standard of review is well known. When the sufficiency of the evidence is challenged in a criminal case, we review all the evidence, viewed in the light most favorable to the prosecution. If we are convinced after our review that a rational factfinder could have found the defendant guilty beyond a reasonable doubt, we affirm. *Mason*, 268 Kan. at 39.

Graham cites *State v. Perry*, 16 Kan. App. 2d 150, 823 P.2d 804, *rev. denied* 249 Kan. 777 (1991), to advance his contention that the evidence was insufficient to support his convictions, claiming that his case is distinguishable from *Perry*. We are not persuaded by Graham's contention. Perry appealed several convictions, including one count of cocaine possession. When he was pulled over by a trooper, there were two occupants in the car, Perry and a woman passenger. Officers were given consent to search the car, and cocaine was found. Perry was driving the car in which drugs were found. The cocaine was found in a duffel bag within the passenger compartment of the car. The duffel bag contained men's toiletries and no women's possessions. The bag was found behind the driver's seat. The Court of Appeals found that the facts were sufficient to lead to the inference of Perry's possession of the cocaine. 16 Kan. App. 2d at 157.

Here, Graham was sitting in the front passenger seat. Marijuana was observed on the passenger side floorboard. Graham testified in his defense. He believed Tucker and Taylor were selling narcotics. In the trunk, officers found marijuana inside a backpack and

a men's shirt. A jacket was also found in the trunk. One jacket pocket contained a video rental card belonging to Graham and marijuana residue. The officers also found a pair of men's running shorts in the trunk. Methamphetamine was found in a dollar bill in the shorts' pocket. Graham testified that he saw Tucker wearing the shorts the day before the search.

According to Sergeant Life, Tucker said that the shorts belonged to Graham and that he wore them all the time. Tucker testified that she had seen Graham wearing the shorts. The sergeant testified Taylor had "just had a baby and she was quite large." He thought the shorts were too small for her. The sergeant testified that Tucker was very thin, and he thought the shorts were too big for her. Tucker testified that at that time she wore a size 3-4, with a 27-inch waist. According to the appellate record, Graham weighed 180 pounds at the time he was booked, and Taylor weighed 175 pounds. The record does not show their heights. A former Geary County Attorney testified that his office had previously prosecuted Graham for possession of methamphetamine, cocaine, and marijuana. In the earlier case, Graham had also used the defense that the clothing in which the drugs were found belonged to someone else.

The district judge as the trier of fact observed and heard the various witnesses. We do not reweigh the evidence. In applying our standard of review we conclude that the evidence was sufficient to support Graham's convictions.

### The *Apprendi* Issue

Finally, Graham contends that under *Apprendi*, his constitutional rights were violated when the district court increased his sentence for the possession of methamphetamine based on his two prior drug convictions. See K.S.A. 2001 Supp. 21-4705; K.S.A. 2001 Supp. 21-4720(b)(3); K.S.A. 2001 Supp. 65-4160(c). We disagree.

As the State notes, Graham failed to raise this issue below. Sentencing occurred in August 2000, after *Apprendi* was filed (June 26, 2000). Generally, a constitutional issue not raised before the district court cannot be raised on appeal. See *State v. Shears*, 260

Kan. 823, 837, 925 P.2d 1136 (1996). However, in *Pierce v. Board of County Commissioners*, 200 Kan. 74, 80-81, 434 P.2d 858 (1967), we recognized exceptions to the general rule. We relied on the *Pierce* exceptions in order to address an *Apprendi* argument raised for the first time on appeal in *State v. Gould*, 271 Kan. 394, 23 P.3d 801 (2001). We follow our reasoning in *Gould* and consider the sentencing issue here.

Graham contends that *Apprendi* prevents the use of prior convictions to increase a sentence beyond the statutory maximum unless proven to a jury beyond a reasonable doubt. The crime of possession of methamphetamine is generally a severity level 4 offense. See K.S.A. 2001 Supp. 65-4160(a). Because Graham had two prior drug convictions, the State charged him with felony possession of methamphetamine with a crime severity level of 1. See K.S.A. 2001 Supp. 65-4160(c).

Graham was sentenced under the KSGA grid for drug crimes. See K.S.A. 2001 Supp. 21-4705. Under K.S.A. 2001 Supp. 65-4160(c) (unlawful acts relating to possession of opiates, opium, narcotic drugs or designated stimulants):

"If any person who violates this section has two or more prior convictions under this section or substantially similar offenses under the laws of another jurisdiction, then such person shall be guilty of a drug severity level 1 felony."

According to Graham, his statutory maximum sentence is derived from consideration of crime severity level "4," not level "1," and a horizontal axis criminal history score of "H." He does not dispute his criminal history score. Using a criminal history score of "H," the presumptive sentence for a severity level 1 drug offense is 142-150-161 months' imprisonment. Using the same criminal history, the presumptive sentence for a severity level 4 drug offense is probation, with an underlying prison term of 12-13-14 months. See K.S.A. 2001 Supp. 21-4705.

Graham argues that under *Apprendi* all facts, including prior convictions, that increase the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. His argument is belied by the language of *Apprendi*, which held: *"Other than the fact of a prior conviction,*

any fact that increases the penalty for a crime must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added.) 530 U.S. at 490.

In *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002), a nondrug case, we concluded that *Apprendi* does not apply where the sentence imposed was based in part upon a defendant's prior convictions, where the prior convictions operated to increase his criminal history score and his sentence. Here, Graham objects to the use of his prior convictions to increase the severity level of the crime and thus his sentence. The net effect is the same: The fact of Graham's prior convictions was used to increase his sentence, which does not implicate the protections articulated in *Apprendi*.

Affirmed.