NOT DESIGNATED FOR PUBLICATION

No. 120,511

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOE LARRY HUNTER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; BARBARA KAY HUFF and GUNNAR SUNDBY, judges. Opinion filed May 29, 2020. Reversed and remanded with directions.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant, and *Joe Larry Hunter*, appellant pro se.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., SCHROEDER, J., and LAHEY, S.J.

PER CURIAM: Joe Larry Hunter was charged with several crimes that took place in and around a medical office in Lawrence, Kansas. At his preliminary hearing, the district court allowed Hunter to waive his right to counsel and represent himself. A jury ultimately convicted Hunter of aggravated burglary, burglary, theft, and three counts of criminal use of a financial card. On appeal, although Hunter makes multiple claims of error, we address only two of the issues. As explained below, we find structural error arising from the district court's decision to permit Hunter to represent himself, so we

1

reverse his convictions and remand his case for a new trial. However, because we find as a matter of law that there was insufficient evidence to convict Hunter of one burglary charge, we reverse that conviction and direct the district court to dismiss that charge.

FACTUAL AND PROCEDURAL BACKGROUND

Laneece Jardon worked as a transportation provider for individuals in the Douglas County area. While waiting in her minivan outside the Medical Arts building in Lawrence, Jardon sat in the very back seat of the unlocked van with her four-month-old grandchild but left her purse between the driver and front passenger seats.

As Jardon sat in the back of the van, a man opened the driver's side door slightly and then shut it quickly. Jardon caught a glimpse of the man but assumed he had accidently tried to get into the wrong vehicle because he walked off after closing the door. Two or three minutes later, the door was fully opened, and the same man reached in to grab Jardon's wallet from her purse. Jardon confronted the man, startling him. The man told her he was "trying to find the lady who the wallet belonged to." The man left and Jardon called the police.

Panda Pediatrics is a doctor's office located in the Medical Arts building along with several other businesses. Panda's office has its own entrance which is open to entry by the public. Inside the business, there is a reception area with two separate waiting rooms. Beyond the waiting rooms is the back area which is typically accessed only by employees and escorted patients. Access to the back is not restricted by any signage, but some of the rooms are locked.

Panda employee Marissa Thomas arrived at work that same morning and placed her purse in an unlocked office in the back area. Thomas' wallet was in the purse and contained her credit cards, debit cards, and her driver's license. Thomas spent the first

hour of her workday in that office but worked in the reception area until she left for lunch. Before leaving, Thomas went back to the office to grab her personal items and found her wallet was empty. Thomas immediately looked at her online bank account and discovered three unauthorized purchases, all of which were made at nearby businesses. Thomas froze her account and called the police.

Based on Jardon's description of the man who entered her van and a security video from the Medical Arts building, police ultimately located Hunter as the likely suspect. Police searched him and found a bank card and a driver's license that belonged to Thomas. Hunter claimed he had Thomas' cards because they were dating, but Thomas denied knowing anyone named "Joe Hunter." The officers arrested Hunter and located various other items on his person that belonged to Thomas. Ultimately, Hunter admitted to using her bank card at three places in Lawrence.

The State charged Hunter with two counts of aggravated burglary—one for Jardon's car and the other for Panda Pediatrics—three counts of criminal use of a financial card, and one count of theft. The district court appointed counsel at Hunter's first appearance. During his preliminary hearing, Hunter requested the dismissal of his attorney and insisted that he be allowed to represent himself. After a brief colloquy, the district court granted his motion, allowed Hunter to waive counsel, and the preliminary hearing proceeded with Hunter representing himself. More than a month later, and before his jury trial, Hunter signed a written waiver of counsel and continued to represent himself at trial.

At trial, Hunter testified he rode the bus to the Medical Arts building to make an appointment with a doctor in an office other than Panda Pediatrics for a herniated disc. When he arrived at the parking lot of the building, he noticed someone had left a purse in a van, so he opened the door but hesitated and shut the door because he "was shocked

3

that it was open." Hunter went back to the van and opened the door thinking no one was inside the van. He was startled when Jardon confronted him, so he shut the door and left.

Hunter testified that after he shut the door, he "walked into the building . . . to look for the person I was supposed to see." He walked down the hallway and the first door he found was unlocked, so he walked in and went down the hallway where four employees were standing. According to Hunter, all the employees saw him but none of them stopped him to tell him he should not be there. As he walked down the hallway, he eventually saw a bag; he "went in there and [he] took that thing out of the bag" and left. During his testimony, Hunter admitted to committing that theft and using those credit cards. But he firmly denied any burglary because he maintained that there were no signs telling him he was unauthorized to be in that part of the building.

When asked on cross-examination about entering Panda Pediatrics, Hunter first testified that typically, when he goes to a doctor's office, he walks into "[w]hatever door that let's [him] into the building." Then, he will walk around the office if there is no one in the reception area to check him in. In response to the prosecutor asking how he entered Panda Pediatrics, Hunter testified:  "I walked through a door . . . that was open that I didn't know it was Panda Pediatrics until after the fact, because I didn't see no signs or nothing that said Panda Pediatrics on the door that I went into or when I walked into the building." Hunter reiterated that the door was unlocked and, after he entered, he walked down a hallway and passed four employees. Ultimately, Hunter admitted he took Thomas' property from her bag without her permission to do so.

At the close of evidence, the State amended the Panda Pediatrics charge from aggravated burglary to simple burglary. The jury convicted Hunter on all charges, and the district court sentenced him to a total of 120 months' imprisonment.

Hunter timely appeals.

I.      DID THE DISTRICT COURT ERR IN ACCEPTING HUNTER'S WAIVER OF APPOINTED
        COUNSEL?

Hunter argues that he did not knowingly and intelligently waive his right to counsel at the preliminary hearing because the district court failed to properly advise him of the information required before permitting waiver of counsel. The State argues that the record supports the district court's acceptance of Hunter's waiver.

Before the start of the preliminary hearing, Mr. Hunter's counsel advised the district court that Hunter had filed a pro se motion objecting to jurisdiction and wanted the court to take up the motion before the hearing. The district court engaged in an extended discussion with Hunter about the motion, telling him, "in general, when a person is represented by counsel, counsel brings motions. You have filed this on your own, and I will look at it, but most—the rule really is that motions are to be brought by counsel," and, "Mr. Hunter, if you have a lawyer who is representing you, you need to work through the lawyer to present matters to the court." The district court told Hunter it would hear argument after hearing the evidence. Defense counsel advised the district court that Mr. Hunter did not want to proceed with the hearing, and she asked for time to discuss a waiver with him. The district court ruled the hearing would proceed. As the preliminary hearing got underway, the following colloquy took place:

> "[DEFENSE COUNSEL]:  Judge, I heard your previous ruling on proceeding today, and I can't pay attention to what the witness is saying because Mr. Hunter is telling me that he does not want this to proceed today and that I need to stop it somehow, and I told him I can't stop it because the court told me we were going to proceed. And that's what he keeps saying to me, so I don't know what to do at this point.
>
> "THE COURT:  What is his reason for stopping proceedings?

5

"[DEFENSE COUNSEL]:  Because he doesn't think that—that the court has jurisdiction or that the State has jurisdiction to proceed in this case.

"THE COURT:  And that's what this hearing is resolving.

"[DEFENSE COUNSEL]:  I know.

"THE COURT:  We will continue.

"[DEFENSE COUNSEL]:  All right."

After a few additional questions to the witness by the prosecutor, the following discussion took place:

"[DEFENSE COUNSEL]:  Judge, I apologize. Mr. Hunter has told me that he no longer wishes for me to be his counsel at this point.

"THE COURT:  Mr. Hunter, we will take that up in a little bit. This hearing will continue.

"THE DEFENDANT:  You can't force me to keep an attorney, Your Honor.

"THE COURT:  Well, I haven't heard any reason why you should not have [defense counsel]. Tell me why.

"THE DEFENDANT:  Because I'll do it my own self.

"THE COURT:  You want to do it by yourself?

"THE DEFENDANT:  Yes.

"THE COURT:  Mr. Hunter, you do have the right to represent yourself. Do you understand that you will be held to the same rules as a lawyer?

"THE DEFENDANT:  Of course.

"THE COURT:  Do you know the rules of evidence?

"THE DEFENDANT:  Yes, I do.

"THE COURT:  You do. Tell me what your legal training is.

"THE DEFENDANT:  My legal training?

"THE COURT:  Yes.

"THE DEFENDANT:  Just like any esquire attorney training is, Your Honor.

"THE COURT:  And what is that, sir?

"THE DEFENDANT:  That's giving them a little bit too much information. That's part of my motion they've got to answer.

"THE COURT:  Well, sir, when you say—

"THE DEFENDANT:  I have the right to fire her, and that's the bottom line to it.

"THE COURT:  You have the right to represent yourself.

"THE DEFENDANT:  Yes.  Under the Fifth Amendment, yes, I do.

"THE COURT:  Under the Sixth Amendment, sir.

"THE DEFENDANT:  That, too.

"THE COURT:  What is your level of education?

"THE DEFENDANT:  I've been to college.

7

"THE COURT: You've been to college. All right. Have you had any legal training?

"THE DEFENDANT: I think I have.

"THE COURT: You think you have. And tell me what it is.

"THE DEFENDANT: Well, it's in my motion.

"THE COURT: All right.

"THE DEFENDANT: I think the State can't answer that motion, Your Honor.

"THE COURT: What I'm going to do at this point, Mr. Hunter, is I will allow you to represent yourself. I'm going to have [defense counsel] sit there as standby counsel. If you have a question and you want to consult with her, you may do so. But you may sit here, listen to the evidence, and you may question the witnesses afterwards.

"Once again, Mr. Hunter, you're at something of a disadvantage because you will be held to the rules of evidence and to the rules of professionalism that attorneys have to follow. You understand?

"THE DEFENDANT: This case is adjourned, Your Honor.

"THE COURT: It is not, sir.

"THE DEFENDANT: Well, I'm done.

"THE COURT: You're done?

"THE DEFENDANT: Yes.

"THE COURT: Sir, if you leave—and I'm not saying that you have to be here—but if you leave, these hearings will proceed without you.

8

"THE DEFENDANT:  That's okay with me.

"THE COURT:  You will not hear the evidence.

"THE DEFENDANT:  No problem.

"THE COURT:  You will not be able to make arguments that you want.

"THE DEFENDANT:  No problem.

"THE COURT:  But if you say to yourself you can't sit here, that you will only be disruptive, you are free to leave. But it will continue in your presence without you.

"THE DEFENDANT:  With no counsel?

"THE COURT:  No. [Defense counsel]—

"THE DEFENDANT:  No. I fired her. I have the right to do that."

The district court then ordered the hearing to proceed. Hunter remained in the courtroom and represented himself at the preliminary hearing.

A.    *The district court did not adequately ensure Hunter knowingly and intelligently waived his right to counsel at the preliminary hearing.*

To exercise the right of self-representation, a defendant is required to knowingly and intelligently waive his right to counsel. The Kansas Supreme Court has held:

"A criminal defendant who before trial clearly and unequivocally expresses a wish to proceed pro se has the right to self-representation after a knowing and intelligent waiver of the right to counsel. A knowing and intelligent waiver requires that the defendant be informed on the record of the dangers and disadvantages of self-representation. The

9

choice is to be made "'with eyes open.'" [Citation omitted.]" *State v. Graham*, 273 Kan. 844, 850, 46 P.3d 1177 (2002).

The determination of whether the waiver of the right to counsel was knowingly and intelligently made depends on the facts and circumstances of each case. *State v. Buckland*, 245 Kan. 132, 137, 777 P.2d 745 (1989). *Buckland* set forth guidelines for the district court to ensure that the right to counsel is knowingly and intelligently waived. The trial judge's inquiry should show the defendant (1) has been clearly advised of his right to counsel, (2) has the capacity to understand the consequences of this decision, and (3) understands the nature of the charges and proceedings, the range of punishments, and any essential facts necessary to a broad understanding of the case. 245 Kan. at 138. In addition, Kansas courts have held that the trial judge should advise the defendant of the following:

> "'(1) that defendant will be held to the same standards as a lawyer; (2) that the trial judge may not aid the defendant in his defense; and (3) that it is advisable to have a lawyer due to the specialized knowledge necessary to conduct a trial and the fact that a lawyer is trained in the law.' [Citation omitted.]" 245 Kan. at 138.

The appellate courts exercise unlimited review over questions involving the interrelated rights to counsel and self-representation. *State v. Bunyard*, 307 Kan. 463, 470, 410 P.3d 902 (2018).

In his discussion with Hunter, the district judge informed Hunter that he would be held to the same rules as a lawyer and he would be at somewhat of a disadvantage because he would be required to follow the rules of evidence and rules of professional conduct. This brief admonition falls far short of complying with the framework set out by *Buckland* to assure Hunter knowingly and intelligently waived his right to counsel. Although Hunter concedes he was "clearly and unequivocally" advised of his right to counsel, the district court failed to advise Hunter under steps two and three of the

*Buckland* framework to ensure the waiver was knowingly and intelligently made. See *Graham*, 273 Kan. at 850; *Buckland*, 245 Kan. at 138.

Under step two of the *Buckland* waiver analysis, the district court should have advised Hunter that the trial judge could not aid him in his defense and should have explained that it was "advisable to have a lawyer due to the specialized knowledge necessary to conduct a trial and the fact that a lawyer is trained in the law." See 245 Kan. at 138. During the colloquy, the district judge asked Hunter about his education and legal training. However, our Supreme Court has held: "A trial court may not measure a defendant's competence to waive his or her right to counsel by evaluating the defendant's 'technical legal knowledge.' *Godinez v. Moran*, 509 U.S. 389, 399-400, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993)." *State v. Jones*, 290 Kan. 373, 377, 228 P.3d 394 (2010). The crux of step two of the *Buckland* analysis is to ensure a defendant has the capacity to understand the consequences of his decision. Yet, when the district judge asked Hunter if he understood what the judge told him, Hunter never actually answered the question. Instead, Hunter announced, "This case is adjourned, Your Honor." Based on the record, we find that the district court did not ensure Hunter had the capacity to understand the consequences of his decision.

Under the third step of the waiver analysis, the district court needed to inform Hunter about the nature of the charges and the proceedings, the range of the punishments he faced if convicted, and the facts he needed to know to understand the case. See *Buckland*, 245 Kan. at 138. The district court did not do so. It accepted his waiver without explaining any charges, possible penalties, or insight into how proceedings would unfold.

Hunter concedes he eventually signed a written waiver of his right to counsel that addressed what the district court failed to address at the preliminary hearing. However, Hunter argues the record does not show that he had the capacity to understand the

consequences of his waiver at the time he made it. Hunter relies on *City of Lawrence v. Jackson*, No. 110,828, 2015 WL 1310152 (Kan. App. 2015) (unpublished opinion), to support his contention that a defendant's waiver of counsel must be knowing and intelligent at the time he makes it. In *Jackson*, a panel of our court found that while "Jackson had *some* information about self-representation, . . . the City fail[ed] to demonstrate that Jackson's decision to waive his right to be represented by an attorney was knowing and intelligent *at the time he made it.*" 2015 WL 1310152, at *6. Like this case, the district court failed to adequately counsel Jackson under steps two and three of the prescribed framework.

The State attempts to distinguish *Jackson* by arguing the record here is "more robust." For example, the district court warned Hunter he would need to adhere to the same standards as an attorney, but in *Jackson* the district court did not give the defendant this warning. The fact the information provided by the district court here is slightly more informative does not alter the fact that it failed to address all the relevant information which is required to fully inform a defendant before accepting a waiver of counsel.

The State also points out that Hunter had waived his right to counsel in another criminal matter, before a different district judge, nearly two months before the preliminary hearing in this case. The State argues "[b]ecause the district court frequently heard this case at the same time as another of Hunter's pending cases, the judge certainly knew that Hunter had previously heard all of the required warnings and still waived his right to counsel."

The State's argument on this point is not persuasive. First, the record here does not support the State's assertion that the district judge knew Hunter had previously heard all the required warnings. The record is silent as to the district judge's knowledge of any previous waiver. And second, the "knowing and intelligent" framework required the district court to inform Hunter about the nature of the charges and proceedings, the range

of punishments he faced, and the facts he needed to know to understand the case. See *Buckland*, 245 Kan. at 138. The record shows none of this information was given to Hunter at the time of his waiver, yet the district court allowed Hunter to represent himself in a legally consequential evidentiary hearing.

Hunter did not knowingly and intelligently waive his right to counsel at the time he made the waiver at the preliminary hearing. As such, the district court erred by failing to make sure Hunter knowingly and intelligently waived his right to counsel. Whether the case should be reversed and remanded on this issue depends on whether the district court's error is structural.

B.      *The error is structural error.*

Hunter contends his unconstitutional waiver of counsel at the preliminary hearing is structural error which requires reversal. Although the State acknowledges that the right to counsel and self-representation attaches to preliminary hearings, it argues that a harmlessness standard should apply. For support, the State cites *State v. Butler*, 257 Kan. 1043, 1062, 897 P.2d 1007 (1995), where our Supreme Court held that unless errors at a preliminary hearing stage somehow prejudiced the trial, the errors are rendered harmless by the defendant being found guilty beyond a reasonable doubt.

"Structural error occurs when the error interferes with the court's basic function and denies a defendant the basic protections afforded during criminal trial. Structural errors are so pervasive they defy analysis by harmless-error standards and require automatic reversal." *State v. Johnson*, 310 Kan. 909, Syl. ¶ 1, 453 P.3d 281 (2019).

Kansas courts have consistently recognized "that the Sixth Amendment, as made applicable to the states by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right to self-representation." *State v.*

13

*Vann*, 280 Kan. 782, 793, 127 P.3d 307 (2006). The right to self-representation extends to all phases of a criminal proceeding, including a preliminary hearing. See *Jones*, 290 Kan. at 379. Because the right to counsel is fundamental, "'[t]he courts must indulge "every reasonable presumption against waiver" of [this right] and will "not presume acquiescence"'" to the loss of this right. *State v. Lowe*, 18 Kan. App. 2d 72, 74-75, 847 P.2d 1334 (1993).

"A violation of a Sixth Amendment right to counsel is subject to structural error analysis." *Jones*, 290 Kan. at 382. Because a properly asserted right to self-representation "'is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to "harmless error" analysis. The right is either respected or denied; its deprivation cannot be harmless.' *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984)." *Vann*, 280 Kan. at 793. Denying a defendant his right to self-representation at a preliminary hearing is also structural error. See *Jones*, 290 Kan. at 382-83.

The Kansas Supreme Court in *Bunyard* found structural error when the district court refused to address the defendant's request for self-representation. 307 Kan. at 478. In *Jackson*, the panel addressed a trial court's failure to make adequate inquiries to ensure a knowing and voluntary waiver and found: "Because the Kansas Supreme Court has determined that a violation of the defendant's right to counsel is structural error, which alone warrants reversing the district court, Jackson is entitled to a new trial." 2015 WL 1310152, at *7. Here, the district court granted Hunter's request for self-representation but failed to assure it was knowingly and intelligently made. Hunter was denied his Sixth Amendment right to self-representation when the district court failed to obtain a proper waiver of his right to counsel and was denied his Sixth Amendment right to counsel when he was permitted to handle his preliminary hearing pro se.

14

"[E]rroneous deprivation of the right to counsel of choice, 'with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as "structural error."' . . . Many counseled decisions, including those involving plea bargains and cooperation with the government, do not even concern the conduct of the trial at all. Harmless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006).

Based on the holdings in *Bunyard*, *Jones*, *Vann*, and *Jackson*, we determine the district court's error was structural error. And while Hunter ultimately made a knowing and intelligent decision to waive his right to counsel before trial, "[m]any counseled decisions . . . do not even concern the conduct of the trial at all." *Gonzalez-Lopez*, 548 U.S. at 150. Applying a harmlessness inquiry here would be mere speculation. Hunter's unconstitutional waiver was intertwined into the entire criminal proceeding because he was allowed to improperly waive his right to counsel and represent himself at the preliminary hearing.

We reverse Hunter's convictions and remand to the district court for a new trial.

All other issues, save one, are rendered moot by our ruling. We address the burglary conviction in the Panda Pediatrics office because the issue would necessarily arise in the retrial of this case.

II.     DOES THE EVIDENCE SUPPORT HUNTER'S CONVICTION FOR BURGLARY OF PANDA PEDIATRICS?

Hunter argues that the State failed to prove the crime of burglary because under Kansas precedent, "defendants must lack the authority to enter a public building where the crime occurs from first entry." Hunter argues that the evidence shows that Hunter entered Panda Pediatrics through an unlocked, unrestricted entrance available to the

public and therefore he had the authorization to enter the building. The State contends the caselaw relied upon by Hunter interprets the burglary statute too narrowly.

Typically, when a defendant challenges the sufficiency of the evidence in a criminal case,

> "'the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.'" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

To the extent this issue calls for statutory interpretation, this court's review is unlimited. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019). When interpreting a statute, "'[t]he most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained.'" *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). Courts should attempt "'to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings.'" *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). An appellate court should resort to using statutory canons of construction only if the statute is ambiguous or unclear. See 303 Kan. at 813.

In the amended complaint, the State charged Hunter with burglary of Panda Pediatrics, in violation of K.S.A. 2017 Supp. 21-5807(a)(2), which defines burglary of a nondwelling as "without authority, entering into or remaining within any: . . . (2) building, manufactured home, mobile home, tent or other structure which is not a dwelling, with intent to commit a felony, theft or sexually motivated crime therein." The State narrowed the charged crime in the jury instructions to the unauthorized entry into Panda Pediatrics with the intent to commit a theft, which removed the "remaining within any" language in the statute. Because the State narrowed the jury instruction, the

16

evidence must support the crime as listed in the instruction rather than the broader crime found in the statute or charging document. See *State v. Robinson*, 27 Kan. App. 2d 724, 726-29, 8 P.3d 51 (2000).

Kansas courts have addressed what qualifies as a building or other structure under K.S.A. 2017 Supp. 21-5807(a)(2), or similar statutes, multiple times. A review of the facts detailing the Panda Pediatrics building is necessary for this analysis. Specifically, it is important to note witnesses testified that:

- Panda Pediatrics is open to the public and the front door is unlocked during business hours.

- There are five entrances into Panda Pediatrics, but only the front entrance is unlocked and open to the public.

- Certain areas of Panda Pediatrics are closed to the public, and patients are only allowed to be in these areas when escorted by an employee.

- Panda Pediatrics is located within a larger building, the Medical Arts building, which houses multiple other businesses.

- Two of the five doors allow entry into Panda Pediatrics from the Medical Arts building.

Hunter relies on *State v. Hall*, 270 Kan. 194, 14 P.3d 404 (2000), to support his position that for the "without authority" element to be satisfied, the perpetrator must initially enter the building without authority. He claims it is not burglary to lawfully enter a building then make an unauthorized entry into an area closed to the public for the purpose of committing a theft.

17

In *State v. Hall*, 27 Kan. App. 2d 313, 319, 3 P.3d 582 (2000), a panel of our court reversed Hall's conviction of burglary. Hall entered a K-Mart during the time it was open to the public. He passed through two closed, but unlocked, doors to get to the stockroom where he stole merchandise. K-Mart did not intend for customers to enter the stockroom. Hall was convicted of burglary. The panel held: "A storeroom which is located within the walls of a larger retail store building does not constitute a 'building' or 'other structure' . . . and entry into the storeroom with the intent to commit a theft does not constitute a burglary." 27 Kan. App. 2d 313, Syl. ¶ 3. The Kansas Supreme Court affirmed the reversal, reasoning it had to "strictly construe penal statutes in favor of the accused, subject to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent." *Hall*, 270 Kan. at 202.

Other panels of our court have taken a broader view of what constitutes a "building" or "other structure." See, e.g., *State v. Parker*, 48 Kan. App. 2d 68, 85, 282 P.3d 643 (2012) (finding hospital room was structure because it "had a door, was temporarily leased to occupants, was designed to exclude others, and was intended to protect the occupant's privacy and security"); *State v. Vinyard*, 32 Kan. App. 2d 39, 42, 78 P.3d 1196 (2003) (finding each store in mall is separate business with own entrance); *State v. Armstrong*, No. 117,038, 2018 WL 2373235, at *6 (Kan. App. 2018) (unpublished opinion) (finding two garages located in a single structure "that are separately enclosed and secured are separate buildings as the term applies in the burglary statute"), *rev. denied* 309 Kan. 1349 (2019).

Most recently, in *State v. Glover*, 56 Kan. App. 2d 1234, 444 P.3d 367 (2019), a panel of this court addressed whether a church sacristy was a building or other structure under the burglary statute. The panel reviewed the cases addressed here, in addition to a few more, and held:

"[T]his court, through its published and unpublished decisions, seems to have read into the burglary statute a definition of building or structure that hinges, in part, on whether an individual or entity is renting or leasing a space within the main building. But we caution, . . . that the plain language of the statute says nothing about whether a room is leased by someone other than the owner. The statute states only that a person may be guilty of burglary if they enter a 'building . . . or other structure' without authority." 56 Kan. App. 2d at 1238-39.

Relevant to this case, the *Glover* panel determined: "A room is not a building or structure under a common understanding of either word. . . . The sacristy was nothing more than a room within the church building. Whether a room inside a building is locked does not impact whether entry into the building or structure was authorized." 56 Kan. App. 2d at 1239. We believe *Glover* is correctly decided.

As the Kansas Supreme Court held in *Hall*, we must "strictly construe penal statutes in favor of the accused." 270 Kan. at 202. Construing the burglary statute to define "structure" to include every separate room within an individual business, as the State suggests, would be to construe it in favor of the State and reach to expand the ordinary meaning of the word.

Finally, the *Hall* decision has been standing for nearly 20 years, and the Legislature has not amended it to include subunits of a building as being buildings and structures. The Kansas Supreme Court has held: "Legislative inaction may not be the strongest indicator of specific legislative purpose, but it is *an* indicator. [Citation omitted.]" *Jordan*, 303 Kan. at 1021. And "legislatures are presumed to be familiar with court precedent and to expect that its enactments will be interpreted accordingly." *State v. Kleypas*, 305 Kan. 224, 261, 382 P.3d 373 (2016).

Based on the plain language of the statute, attempting to commit a theft by the unauthorized entry into a subpart of a building that a person was initially authorized to

19

enter cannot qualify as burglary under K.S.A. 2017 Supp. 21-5807(a)(2). Here, the individual rooms within Panda's office are not separate structures under the burglary statute. Because there is no evidence that Hunter was not authorized to enter the Panda office when he took Thomas' property, we find the evidence is insufficient to support his conviction. Hunter's burglary conviction is therefore reversed.

Reversed and remanded with directions.